In re the MARRIAGE OF Leisa T.
GRUBB, Petitioner,

and

William E. Grubb, Respondent.

No. 86SC93.

Supreme Court of Colorado,
En Banc.

Nov. 9, 1987.

Frederick Epstein, Denver, Polidori, Rasmussen, Gerome and Jacobson, Peter L. Franklin, Lakewood, for petitioner.

Garfield & Hecht, P.C., Robert E. Kendig, Aspen, for respondent.

QUINN, Chief Justice.

The question in this case is whether a husband's interest in a vested employer-supported pension plan constitutes marital property subject to division upon dissolution of marriage when the receipt of benefits under the plan is contingent upon the husband's survival until the actual commencement of retirement. The court of

appeals in *In re Marriage of Grubb*, 721 P.2d 1194 (Colo.App.1986), held that the husband's interest in the plan was not marital property. We reverse the judgment and remand the case for further proceedings.

## I.

The petitioner, Leisa T. Grubb (wife), and the respondent, William A. Grubb (husband), were married on April 5, 1950. They had one child who was emancipated prior to the commencement of the present dissolution proceeding. When the decree of dissolution was entered on February 28, 1984, the wife was 58 years of age and the husband was 60 years of age. The wife was unemployed at the time of the decree, having worked primarily as a mother and homemaker during the marriage. The husband has been employed by the Atlantic Richfield Company (ARCO) since February 2, 1948, and was earning approximately $92,000 per year at the time of the decree. Although the husband was eligible for retirement when the decree was entered, he testified that he was in good health and had no plans for retirement in the foreseeable future. ARCO has no mandatory retirement age.

During the course of his employment with ARCO, the husband participated in the Atlantic Richfield Retirement Plan (Plan). Under the terms of the Plan, the employee's retirement benefits become fully vested after the completion of ten years of service; and after fifteen years of service, the employee is eligible to retire at age 55 and receive 100% of the money in the Plan. Prior to 1974 the employees were required to make contributions to the Plan, but since that time the Plan has been employer-funded, with the employees being permitted to make voluntary contributions. Upon the employee's retirement or death, all employee contributions, plus interest, are unconditionally returned to the employee, the employee's estate, or beneficiary.

The employer contributions are kept separately from and are not intermingled with the employee contributions. The amount of the employer contributions is actuarially determined each year on a group basis, utilizing interest rates, mortality tables, turnover rates, ages of all Plan members, salary scales, and other factors. Employer contributions, in contrast to employee contributions, are "retirement qualified," which means that the employee must survive until the commencement of retirement in order to receive any payment. If the employee dies unmarried before retiring, only the employee contributions, plus interest, are paid to the employee's estate or the employee's beneficiary, even though the employee's right to benefits might have fully vested. Thus, although the employee has a vested right to payment after completing ten years of service, this right is subject to the requirement that the employee survive until the actual commencement of retirement. The employer contributions, therefore, have no cash or loan value prior to retirement, and cannot be sold, conveyed, pledged, garnished, or attached.

When the dissolution decree was entered, the husband had been employed by ARCO for 36 years and his right to retirement benefits was fully vested. He had made required and voluntary contributions which, with accrued interest, were valued at approximately $32,000, and ARCO had made employer contributions which, when added to the husband's contributions, brought the total value of the husband's interest in the Plan to approximately $250,-000. As of the date of the dissolution decree, the husband, if he had chosen to retire at that time, would have been entitled to receive the total amount of employer contributions or, alternatively, a lifetime pension of approximately $2900 per month, calculated on the basis of several factors including his average annual salary during the last three years of employment.[1]

---

1. The amount of monthly pension is determined by a complex calculation which includes, in addition to the employee's annual salary during the last three years of employment, an annuity factor based on the employee's age at retire-

ment, the employee's average annual Social Security tax base, the employee's total number of years of employment and age at retirement, the method chosen by the employee to receive payment of voluntary and required contributions,

At the dissolution hearing, John Connell, a certified public accountant, estimated that the present value of the husband's interest in the Plan was approximately $250,000. He offered two reasons for this opinion. First, the husband would receive approximately that amount if he immediately retired. Second, according to Connell, if the husband elected to retire at age 65 (five years after the dissolution), he would be entitled to receive $37,759.63 per year. Based on the husband's life expectancy at age 65 of 14.05 years and expected benefits over that period of time of $530,523, Connell discounted the total benefits to a present value by using a seven per cent discount factor, and concluded that the present value of the husband's interest in the Plan was within ten per cent of $250,000.

In contrast to Connell's opinion, Jerome Karsh, also a certified public accountant, estimated that the fair market value of the husband's interest in the plan was $32,000 —the amount of his required and voluntary contributions. Karsh based his opinion on the fact that the husband was not entitled to receive the employer contributions until the commencement of retirement.

Finding that "there [was] nothing speculative or uncertain about [the husband's] rights to the money" and that "he could if he wished, quit work and withdraw the money he ha[d] accumulated," the trial court concluded that the employer contributions to the Plan qualified as marital property. The court then valued the retirement benefits at $250,000, and awarded these benefits to the husband in addition to other property valued at $42,722. In order to equalize the award of the Plan to the husband, the court awarded various items of marital property to the wife and also ordered the husband to pay maintenance of $2,350 per month until further order of the court. The husband appealed, and the court of appeals reversed the judgment. It held that an employer-supported pension plan subject to divestment is not an item of marital property but rather is an economic resource to be received in the future and,

and whether a pension will be paid to a survivor

hence, is merely a factor to be considered in fixing the amount of maintenance. *Grubb*, 721 P.2d at 1196. We thereafter granted the wife's petition for certiorari to consider whether the pension plan in this case qualifies as marital property under section 14–10–113(1), 6 C.R.S. (1973 & 1986 Supp.).

## II.

Under the Uniform Dissolution of Marriage Act, §§ 14–10–101 to –133, 6 C.R.S. (1973 & 1986 Supp.), the district court in a dissolution proceeding is required to:

divide the marital property, without regard to marital misconduct, in such proportions as the court deems just after considering all relevant factors including:

(a) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

(b) The value of the property set apart to each spouse;

(c) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children; and

(d) Any increases or decreases in the value of the separate property of the spouse during the marriage or the depletion of the separate property for marital purposes.

§ 14–10–113(1), 6 C.R.S. (1973 & 1986 Supp.). Although the Uniform Act does not define the term "property," section 14–10–113(2), 6 C.R.S. (1973), states that "[f]or purposes of this article only" the term " 'marital property' means all property acquired by either spouse subsequent to the marriage except:"

(a) Property acquired by gift, bequest, devise, or descent;

(b) Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise, or descent;

upon the employee's death.

(c) Property acquired by a spouse after a decree of legal separation;

(d) Property excluded by valid agreement of the parties.

We have previously considered whether particular forms of retirement benefits qualify as marital property. In *Ellis v. Ellis*, 191 Colo. 317, 552 P.2d 506 (1976), for example, we held that military retirement pay, which the husband had just begun to receive at the time of the dissolution decree, was not marital property because it did not have "any of the following elements: cash surrender value; loan value; redemption value; lump sum value; and value realizable after death." 191 Colo. at 319, 552 P.2d at 507. Subsequent to *Ellis* we decided *Mitchell v. Mitchell*, 195 Colo. 399, 579 P.2d 613 (1978), in which we held that the employee contributions of the husband-schoolteacher to the Public Employees Retirement Association (PERA) fund were marital property subject to division in a dissolution proceeding. Drawing on the analysis of the court of appeals in *In re Marriage of Pope*, 37 Colo.App. 237, 544 P.2d 639 (1975), which addressed this identical issue, we emphasized in *Mitchell* that there was nothing "speculative or uncertain about the husband's right to the money" and that if he wished he could presently quit work and withdraw his contributions from the fund. 195 Colo. at 403, 579 P.2d at 616. We then distinguished the husband's contributions to the PERA fund from the military retirement pay considered in *Ellis:*

> PERA funds have many of the attributes which we found lacking in military retirement pay. Our distinction between the two retirement plans is based on a belief that it would be unwise to consider as property those items which have no present value and which may never acquire value. A military retirement plan of the type discussed in *Ellis* may never be of any value if the employee dies before he retires. Because its future value is only speculative, and it has no present 'exchangeable' value, it cannot be considered marital property.

195 Colo. at 403, 579 P.2d at 617; *see also In re Marriage of Laychak*, 704 P.2d 874

(Colo.App.1985) (husband's military pension not marital property); *In re Marriage of Ward*, 657 P.2d 979 (Colo.App.1982) (husband's pension plan, funded by employer contributions, not marital property because, although benefits were vested due to husband's ten years of employment, benefits were subject to divestment in the event husband died before retirement and thus plan had no present "exchangeable" value); *In re Marriage of Camarata*, 43 Colo.App. 317, 602 P.2d 907 (1979) (employer contributions to husband's civil service retirement plan were not marital property because husband's receipt of benefits was contingent on his survival).

A rule directed to the disposition of property in a dissolution proceeding can only be as sound as the economic reality which it attempts to service. We are satisfied that our analysis of the concept of "marital property" in *Ellis* and *Mitchell* does not adequately account for the true nature of retirement plans. Retirement benefits, far from being a mere gratuity deriving from the employer's beneficence, are nothing less than a form of deferred compensation —that is, they are consideration for past services performed by the employee and constitute part of the compensation earned by the employee. *E.g., In re Marriage of Brown*, 15 Cal.3d 838, 544 P.2d 561, 126 Cal.Rptr. 633 (1976); *In re Marriage of Musser*, 70 Ill.App.3d 706, 388 N.E.2d 1289 (1979); *Foster v. Foster*, 589 S.W.2d 223 (Ky.App.1979); *Deering v. Deering*, 292 Md. 115, 437 A.2d 883 (1981); *Blitt v. Blitt*, 139 N.J.Super. 213, 353 A.2d 144 (1976); *Majauskas v. Majauskas*, 61 N.Y.2d 481, 463 N.E.2d 15, 474 N.Y.S.2d 699 (1984); *Busby v. Busby*, 457 S.W.2d 551 (Tex.1970). We agree, in this respect, with the observation of the Maryland Court of Appeals:

> [I]t is significant that over the past several years, pension benefits have become an increasingly important part of an employee's compensation package which he or she brings to a marriage unit. Moreover, in a situation where economic circumstances prevent a husband and wife from saving or investing a portion of the wage earner's income, the pension right

swells in importance as retirement or vesting approaches, and may well represent the most valuable asset accumulated by either of the marriage partners. *Deering,* 292 Md. at 122–23, 437 A.2d at 887.

We recognize that a "vested" pension right must be distinguished from a "matured" pension right. "Vesting" occurs when an employee has completed the minimum terms of employment necessary to be entitled to receive retirement pay at some point in the future; a vested right "matures" when the employee reaches retirement age and elects to retire. *E.g., Johnson v. Johnson,* 131 Ariz. 38, 41 n. 2, 638 P.2d 705, 708 n. 2 (1981); *Brown,* 15 Cal.3d at 842, 544 P.2d at 563, 126 Cal.Rptr. at 637; *In re Marriage of Hunt,* 78 Ill.App.3d 653, 658, 397 N.E.2d 511, 515 (1979). The receipt of pension payments under a vested but unmatured pension plan is thus contingent on some future event. This contingency, however, does not render the plan so speculative as to remove it from the category of marital property.

While one might invoke the law of future interests to support an argument that a vested but unmatured pension right is a mere "expectancy" until such time as a right actually matures, a more persuasive argument, in our view, is that the employee's right derives from his contract of employment. Such a right is not a mere expectancy but, rather, is an enforceable contractual right that traditionally has been recognized as a *chose in action* and thus a form of property. *See, e.g., Brown,* 15 Cal.3d at 845, 554 P.2d at 565, 126 Cal.

Rptr. at 337; *Weir v. Weir,* 173 N.J.Super. 130, 134, 413 A.2d 638, 640 (1980). We find the controlling consideration to be that an employee who is fully vested under a pension plan has a *right* to receive payment at some time in the future. The mere existence of a future contingency does not downgrade that vested right to nonmarital property even though receipt of payment under the plan might be contingent upon the employee surviving until the actual commencement of retirement. To exclude the employee's interest in a vested but as yet unmatured pension from the category of marital property not only ignores the true character of that interest as remuneration for past services but, more importantly, invites inequity, rather than equity, into the dissolution proceeding.

■ Any contingencies underlying the actual commencement of retirement under a pension plan should be taken into account, not when determining whether the pension plan is properly includable in the marital estate, but, rather, when the court disposes of marital property between the parties. *Deering,* 292 Md. at 129, 437 A.2d at 891. We thus hold that a spouse's interest in a vested but unmatured employer-supported pension plan, to the extent that such plan has been funded by employee and/or employer contributions during the course of a marriage, is marital property subject to equitable distribution in a dissolution proceeding.[2] Any statement or intimation to the contrary in our prior decisions in *Ellis* and *Mitchell* is hereby expressly disapproved.

---

**2.** Our holding is consistent with the vast majority of jurisdictions addressing this issue. *E.g., Neal v. Neal,* 116 Ariz. 590, 570 P.2d 758 (1977) (community property jurisdiction); *Day v. Day,* 281 Ark. 261, 663 S.W.2d 719 (1984); *In re Marriage of Brown,* 15 Cal.3d 838, 544 P.2d 561, 126 Cal.Rptr. 633 (1976) (community property jurisdiction); *Clarke v. Clarke,* 443 So.2d 486 (Fla.Dist.App.1984); *In re Marriage of Hunt,* 78 Ill.App.3d 653, 34 Ill.Dec. 55, 397 N.E.2d 511 (1979); *In re Marriage of Schissel,* 292 N.W.2d 421 (Iowa 1980); *Foster v. Foster,* 589 S.W.2d 223 (Ky.App.1979); *Deering v. Deering,* 292 Md. 115, 437 A.2d 883 (1981); *Hatcher v. Hatcher,* 129 Mich.App. 753, 343 N.W.2d 498 (1983); *Taylor v. Taylor,* 329 N.W.2d 795 (Minn.1983);

*Lynch v. Lynch,* 665 S.W.2d 20 (Mo.App.1983); *Hodgins v. Hodgins,* 126 N.H. 711, 497 A.2d 1187 (1985); *Weir v. Weir,* 73 N.J.Super. 130, 413 A.2d 638 (1980); *Copeland v. Copeland,* 91 N.M. 409, 575 P.2d 99 (1978); *Majauskas v. Majauskas,* 61 N.Y.2d 481, 463 N.E.2d 15, 474 N.Y.S.2d 699 (1984); *In re Marriage of Tjernlund,* 27 Or.App. 699, 557 P.2d 60 (1976); *Hansen v. Hansen* 273 N.W.2d 749 (S.D.1979); *Wilder v. Wilder,* 85 Wash.2d 364, 534 P.2d 1355 (1975); *Bloomer v. Bloomer,* 84 Wis.2d 124, 267 N.W.2d 235 (1978); *see generally* Annotation, *Pension or Retirement Benefits as Subject to Award or Division by Court in Settlement of Property Rights Between Spouses,* 94 A.L.R.3d 176 (1979).

## III.

■ We recognize that the court's task of valuing prospective pension payments is somewhat difficult when the employee's right to payment under the plan, although presently vested, can nonetheless be terminated by his or her death prior to the actual commencement of retirement. When faced with such a problem, the court might employ any one of several alternatives in determining the value of the vested but unmatured retirement plan. We briefly outline two of the more frequently used methods of valuation.

The first method involves placing a present value on the retirement plan, as of the date of dissolution, by using actuarial tables to determine the life expectancy of the employee-spouse, by considering all the circumstances of the case, and by evaluating the probability that the employee-spouse will eventually exercise his or her rights under the retirement plan. *See Hunt,* 78 Ill.App.3d at 663, 397 N.E.2d at 519; *Deering,* 292 Md. at 130, 437 A.2d at 891; *Copeland v. Copeland,* 91 N.M. 409, 413–14, 575 P.2d 99, 103–04 (1978); *Wilder v. Wilder,* 85 Wash.2d 364, 368–69, 534 P.2d 1355, 1358 (1975). While this method of valuation involves various assumptions regarding mortality and the amount of retirement pay to which the employee-spouse will be entitled upon commencement of retirement, it nonetheless might prove particularly attractive in those cases "in which the trial court believes that the risks of total forfeiture of the pension rights are so remote that it would be appropriate to fix a present value and distribute a portion thereof to the nonpensioner spouse." *Weir,* 173 N.J.Super. at 135, 413 A.2d at 641. Once the court has calculated the present value of the plan, it may, in the exercise of its discretion, award that amount to the employee-spouse and award the nonemployee-spouse other marital property to offset his or her marital share in the plan. This type of distribution, of course, requires that there be sufficient marital property available to the nonemployee-spouse to offset the award of the pension plan to the employee-spouse.

A second method is to calculate the interest in the fund acquired during the marriage and provide for its distribution on a percentage basis, along with incremental value, at the time the funds become available to the employee-spouse. *E.g., Hunt,* 78 Ill.App.3d at 663, 397 N.E.2d at 519; *Foster,* 589 S.W.2d at 224–25; *Deering,* 292 Md. at 130–31, 437 A.2d at 891–92; *Weir,* 173 N.J.Super. at 135, 413 A.2d at 640; *Copeland,* 91 N.M. at 413–14, 575 P.2d at 103–04; *Cearley v. Cearley,* 544 S.W.2d 661, 666 (Tex.1976); *Bloomer v. Bloomer,* 84 Wis.2d 124, 135, 267 N.W.2d 235, 241 (1978). This method has the effect of equally apportioning any risk of forfeiture upon both parties to the dissolution proceeding. Under this method, the court need not determine the present value of the retirement plan and can simply calculate the appropriate percentage to which the nonemployee-spouse will be entitled when payments under the plan actually begin.

A trial court can also consider some other method of valuation that might better address the needs and interests of the parties. Our intent here is not to create inflexible rules of property valuation. Rather, we merely mention these two commonly used approaches in the interest of providing trial courts with alternative methodologies that have proved effective in other jurisdictions.

## IV.

Turning to the facts of this case, there can be no question that the husband's contribution of $32,000 to the Plan was fully vested and fully matured. The husband also had a vested but unmatured right to the employer contributions, which right was subject to the condition that he survive until the actual commencement of his retirement. Both the husband's contributions to the Plan and the employer's contributions to the Plan, to the extent that they were made during the course of the marriage, constitute marital property within the meaning of section 14-10-113(2), 6 C.R. S. (1973), and the court of appeals erred in holding to the contrary.

The appropriate disposition of this case, in our view, is to return the case to the district court for further proceedings. In placing a value of $250,000 on the Plan, the district court did not have the benefit of the alternative methods of valuation discussed in this opinion. Moreover, it appears that in fixing a present value on the Plan, the court failed to consider that the husband's right to the employer contributions was subject to the contingency that he survive until the actual commencement of his retirement. Consideration of that contingency, along with other factors bearing on the present value of the husband's vested but unmatured right, might well result in a different value for this marital asset. For example, although the Plan provided the husband with the option of taking a monthly pension payment for life in lieu of a lump sum payment of the total amount of the Plan, the monthly pension payment would be directly related to the employee's salary over the last three years of his employment. The value placed on the husband's interest in the Plan could well be more or less than $250,000, depending on the method of valuation selected by the court and the various contingencies factored into that evaluation. Under these circumstances, we believe the district court should reconsider the disposition of marital property, along with the interrelated issue of maintenance, in the interest of arriving at a fair and just resolution of this controversy.

We reverse the judgment of the court of appeals and remand the case to that court with directions to return the case to the district court for further proceedings consistent with the views herein expressed.

ERICKSON, J., dissents.

ERICKSON, Justice, dissenting:

I respectfully dissent. In my view, the majority's decision to overrule *Ellis v. Ellis*, 191 Colo. 317, 552 P.2d 506 (1976), and *Marriage of Mitchell*, 195 Colo. 399, 579 P.2d 613 (1978), ignores the doctrine of stare decisis. It also invites the admission of expert testimony regarding the value of contingent contract rights acquired during a marriage.

In *Ellis*, we held that military retirement pay, which the husband had begun to receive at the time of the dissolution decree, was properly considered in determining maintenance but was not marital property. The *Ellis* court reasoned that the retirement benefits lacked the attributes of "property" under the dissolution of marriage act because they had no cash surrender value, loan value, redemption value, or value realizable after death. In *Mitchell*, we held that employee contributions to the Public Employees Retirement Association (PERA) were marital property and distinguished *Ellis* as follows:

> PERA funds have many of the attributes which we found lacking in military retirement pay. Our distinction between the two retirement plans is based on a belief that it would be unwise to consider as property those items which have no present value and which may never acquire value. *A military retirement plan of the type discussed in Ellis may never be of any value if the employee dies before he retires. Because its future value is only speculative, and it has no present "exchangeable" value, it cannot be considered marital property.*

*Mitchell*, 195 Colo. at 403, 579 P.2d at 617 (emphasis added) (citing *Marriage of Graham*, 194 Colo. 429, 574 P.2d 75 (1978) (holding that an educational degree is not "property" under the Uniform Dissolution of Marriage Act)).

The doctrine of stare decisis imposes a duty on a court to exercise extreme reluctance in overruling settled law, and promotes uniformity, certainty, and stability in the law and in individual rights. *Creacy v. Industrial Comm'n*, 148 Colo. 429, 366 P.2d 384 (1961). Thus, where a prior decision has become an established part of jurisprudence, any necessary changes should not come from the courts but from the legislature or from the people. *City and County of Denver v. Duffy Storage and Moving Co.*, 168 Colo. 91, 450 P.2d 339, *appeal dismissed*, 396 U.S. 2, 90 S.Ct. 23, 24 L.Ed.2d 1 (1969). Where, as here,

property rights are involved, courts should be especially reluctant about changing the law. *People ex rel. Bentley v. Le Fevre,* 21 Colo. 218, 40 P. 882 (1895). Because *Ellis* and *Mitchell* have constituted a part of Colorado jurisprudence for over a decade, I would not overrule those precedents under the facts of this case. *See Creacy,* 148 Colo. at 429, 366 P.2d at 384 (no deviation from stare decisis was justified where precedent was in effect for a third of a century and had been generally recognized in practice).

The policies underlying *Ellis* and *Mitchell* provide additional support for the application of the doctrine of stare decisis in this case. The holding of *Ellis,* that contingent pension benefits should be considered in awarding maintenance but not as an item of marital property, substantially decreases the need for expert testimony, and reduces the complexity of divorce proceedings and the costs to the litigants. *Ellis* also avoids the problems inherent in computing the present value of contingent pension rights. The speculative nature of contingent pension rights complicates their valuation because it substantially reduces, or even eliminates, their marketability. Finally, *Ellis* avoids inequity to the holder of the contingent pension right because he or she will not be forced to pay for something that may never be received. Other jurisdictions have recognized the merits of this approach and employ similar methodologies. *See Savage v. Savage,* 176 Ind.App. 89, 374 N.E.2d 536 (1978); *Grant v. Grant,* 9 Kan. App.2d 671, 685 P.2d 327 (1984); *Marriage of Faulkner,* 582 S.W.2d 292 (Mo.App. 1979).

In this case, the policies underlying *Ellis* are particularly applicable because dicta contained in the majority's decision will open an avenue to expert appraisal testimony. The majority justified its decision on the grounds that an employee's pension rights derive from his or her contract of employment and that an employee is fully vested under a pension plan if he or she has a right to receive payment at a future time, even though that right is contingent and not absolute. Under the majority's

reasoning, marital property will include not only all contingent retirement plans held by either spouse but also any contingent contract rights acquired by either spouse during marriage. According to the majority, the nature and probability of the contingency will not alter the characterization of the rights as marital property. In my view, this interpretation will vastly increase the scope of marital property and the amount and complexity of valuation problems confronted by the courts.

Because it is unwise to overrule *Ellis* and *Mitchell* under the facts of this case, I dissent and would affirm.