**In re the MARRIAGE OF Marilyn R. NELSON, Petitioner,**

**and**

**David J. Nelson, Respondent.**

**No. 85SC412.**

Supreme Court of Colorado,
En Banc.

Dec. 21, 1987.

Carlyle V. Perry, Columbus, Ohio, for petitioner.

Johnroe, Claassen & McCargar, Sarah D. Claassen, Steamboat Springs, for respondent.

Robert T. Hinds, Jr. & Associates, P.C., Linda Daley, Frank L. McGuane, Jr., Denver, for amicus curiae Colorado Bar Assn.

VOLLACK, Justice.

We granted certiorari on the issue of whether a vested pension plan subject to divestment was an "economic circumstance" to be considered in dividing marital property pursuant to section 14-10-113(1)(c), 6B C.R.S. (1987). The court of appeals, in *In re Marriage of Nelson*, 710 P.2d 1175 (Colo.App.1985), held that the husband's interest in the plan was not marital property, and also, was not to be considered an "economic circumstance" in the division of property pursuant to the dissolution of the marriage. Our recent decision, *In re Marriage of Grubb*, 745 P.2d 661 (Colo.1987), in which we held that a spouse's interest in a vested but unmatured, employer-supported pension plan was marital property subject to equitable distribution in a dissolution proceeding, is dispositive of this case. Therefore, we reverse the judgment and remand the case for further proceedings.

I.

The petitioner, Marilyn R. Nelson (wife), and the respondent, David J. Nelson (husband), were married on November 15, 1961. At the time the decree of dissolution was entered on August 30, 1983, the husband was 41 years of age, and the wife was 38 years of age. Two children were born of the marriage and at the time of dissolution one child was still a minor, being 16 years of age. Custody of this child was vested in the husband. The husband was employed by the Pittsburg and Midway Coal Mining Company (P & M), earning approximately $40,000 per year, and the wife was an unemployed licensed practical nurse.

At the dissolution hearing on August 30, 1983, the disposition of property was at issue. The property consisted of the marital residence, furniture and household goods, various motor vehicles, bank accounts, and the subject of dispute, the husband's pension plan, entitled "Pension Plan of the Pittsburg and Midway Coal Mining Co. for Employees Represented by the United Mineworkers of America Under Western Coal Wage Agreement" (Plan). P & M bore the entire cost of the plan with no contribution from the employee. The benefits could not be anticipated, alienated, sold, transferred, assigned, pledged, or encumbered, and the plan had no cash surrender value. The plan provided that the husband could not receive benefits until age 55 or upon total disablement, and upon his death, the retirement plan was subject to total divestment unless he was retired and at least 55, or disabled at the time of death. A surviving spouse was entitled to 50% of the benefits which would have been payable to the employee.

At the hearing the wife offered the testimony of Dr. James A. Ebenson, an economist who was accepted as an expert. Dr. Ebenson testified as to the economic value of the husband's pension plan as determined by several methods. Under the "investment approach," the contribution of P & M was estimated from the date of hire, January of 1968, to the date of the dissolution of the marriage, August 30, 1983, for a total of $33,036. Under what Dr. Ebenson called the "conservative approach," looking at interest rates, the present value of the pension was $26,045, and by the "traditional approach" the Plan was valued between $26,000 and $47,000, depending on the age at retirement. Dr. Ebenson also testified that the husband's right to retirement benefits was vested at the time of dissolution.

In disposing of property between parties, the trial court ruled that the marital property should be divided equally. The court held that the husband's pension plan had a current value of $30,000, to which the wife was entitled to one-half of the present value, regardless of whether the plan was considered an "economic circumstance" or a marital asset. The trial court then added up all the marital property subject to division, including the plan, for a total of $104,986, and divided it into equal halves. The husband was awarded the marital residence. Since the remaining property was not sufficient to offset the value of the house, the court ordered the husband to execute and deliver to the wife a promissory note in the amount of $40,603, $15,000 of which accounted for the wife's allotted share of the pension. The note was pay-

able in monthly installments of $400, with the entire balance due and payable in a balloon payment on August 30, 1986. No maintenance was awarded to the wife.

The husband appealed the trial court's division of the property, and the court of appeals reversed the judgment. It held that the pension plan was not marital property under section 14–10–113(2), and went further to conclude that the pension plan was not an "economic circumstance" to be considered in the division of property because it bore "none of the indicia of property as defined in *Ellis v. Ellis*, [36 Colo.App. 234, 538 P.2d 1347 (1975), *aff'd*, 191 Colo. 317, 552 P.2d 506 (1976),]" and had "no ascertainable value." *Nelson*, 710 P.2d at 1176.

## II.

Section 14–10–113(1), 6B C.R.S. (1987), of the Uniform Dissolution of Marriage Act, provides that in a dissolution proceeding, the district court is required to

> divide the marital property, without regard to marital misconduct, in such proportions as the court deems just after considering all relevant factors including:
> (a) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;
> (b) The value of the property set apart to each spouse;
> (c) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children; and
> (d) Any increases or decreases in the value of the separate property of the spouse during the marriage or the depletion of the separate property for marital purposes.

We granted certiorari in this case to determine whether the court of appeals' decision that the pension in this case did not qualify as an "economic circumstance" under section 14–10–113(1)(c), was inconsistent with prior case law. *See Ellis v. Ellis,*

36 Colo.App. 234, 538 P.2d 1347 (1975), *aff'd*, 191 Colo. 317, 552 P.2d 506 (1976) (husband's army retirement pension does not constitute marital property but is to be considered as any other "economic circumstance" in determining a just division of property). Since granting certiorari on this case, we have reexamined the concept of "marital property," specifically as it applies to pension plans.

■ In *In re Marriage of Grubb*, 745 P.2d 661 (Colo.1987), we considered whether a husband's interest in a vested employer-supported pension plan constituted marital property subject to division upon dissolution of marriage when the receipt of benefits under the plan is contingent upon the husband's survival until the actual commencement of retirement. We held that a vested pension right, even when contingent on some future event, for example, the survival of the employee until retirement, "does not render the plan so speculative as to remove it from the category of marital property." *Grubb*, at 665. We further held that "to exclude the employee's interest in a vested but as yet unmatured pension from the category of marital property not only ignores the true character of that interest as remuneration for past services, but more importantly, invites inequity, rather than equity, into the dissolution proceeding." At 665. Since *Grubb* answers the broader question of whether a vested pension plan is marital property, it is unnecessary for us to address the narrower issue of whether such a plan is an "economic circumstance" that can be considered by the court. Therefore, the husband's pension was properly considered as marital property by the trial court.

## III.

Having determined that the husband's vested right in the P & M pension plan constitutes marital property within the meaning of section 14–10–113(2), 6B C.R.S. (1987), we must consider the appropriate disposition of this case as it concerns the valuation of the pension plan.

■ Division of marital property is a matter resting within the discretion of the trial court. *In Re Marriage of Price*, 727 P.2d 1073 (Colo.1986). However, when a court disposes of marital property of parties in a dissolution of a marriage, the contingencies underlying the commencement of retirement under a pension plan must be taken into account. *Grubb*, at 665. The principles of fairness and equity, which guided our holding in *Grubb* that a vested but unmatured pension plan is marital property, must attend the valuation process.

In *Grubb*, we offered two possible methods that the courts could use to determine the value of a retirement plan. The first consisted of placing a present value on the plan, and awarding the nonemployee-spouse a portion of the plan or other marital property in lieu thereof. We noted that this method might be appropriate where the risks of forfeiture of the pension rights were sufficiently remote to make the determination of a present value and distribution to the nonemployee-spouse equitable. *See Grubb*, at 666; *Weir v. Weir*, 173 N.J. Super. 130, 413 A.2d 638 (1980). Under the facts of *Grubb* this method might be equitable because the husband was sixty years of age at the time of the dissolution and could immediately retire and receive full pension rights. However, we still remanded *Grubb* to the court of appeals with directions to return the case to the trial court to consider the fact that the husband's right to the pension was subject to the contingency that he survive until his retirement, and the effect this contingency would have on the pension's value. *Grubb*, at 666.

In the case at bar, the risks of total forfeiture of the rights under the P & M pension plan are substantial. The trial court's determination of the current value of the plan at $30,000 does not take into consideration any of the contingencies that may result in forfeiture, such as the death of the husband before retirement, and as such would result in unfairness to the employee-spouse by placing all the burden of forfeiture on him. In addition, the marital property was not sufficient to offset the court-established present value of the retirement plan, and as a result, the husband was ordered to execute a promissory note, and would be required to pay the wife the total amount of her share in the pension in three years, long before his contingent right to receive benefits from the plan would mature.

■ In this case, the second method mentioned in *Grubb*, or a similar method, would avoid the potential for unfairness which could result from assigning a present value to the pension plan. This second method involves calculating the interest in the plan which was acquired by the employee-spouse during the marriage and providing for its distribution between the two parties on a percentage basis, along with an incremental value, at the time funds become available. *See, e.g., In Re Marriage of Hunt*, 78 Ill.App.3d 653, 34 Ill.Dec. 55, 397 N.E.2d 511 (1979); *Deering v. Deering*, 292 Md. 115, 437 A.2d 883 (1981). Where there is a fourteen year period from the dissolution of the marriage until the employee-spouse's earliest opportunity for retirement the risks of forfeiture are significant and the method chosen by the trial court is unsatisfactory. Here, one method would be to calculate the appropriate percentage to which the nonemployee will be entitled when payments under the plan actually begin, or some other method that adequately accounts for the risks of forfeiture and balances those risks equitably. The contingency of the pension is, therefore, an important factor for the trial court to consider.

Accordingly, we reverse the judgment of the court of appeals and remand the case to that court with direction to return the case to the district court for further proceedings consistent with this opinion.