In re the MARRIAGE OF Marsha Karen McGINNIS, Appellee,

and

Louis Fredrick McGinnis, Appellant.

No. 87CA0134.

Colorado Court of Appeals, Div. III.

Feb. 9, 1989.

Frederick L. Ginsberg, Parker, for appellee.

Larry M. Snyder, Denver, for appellant.

FISCHBACH, Judge.

In this dissolution of marriage action, Louis F. McGinnis (husband) appeals the trial court's distribution of property and contempt orders. We affirm in part and reverse in part.

### I.

Husband first contends that the trial court improperly valued and allocated his pension benefits. We agree in part.

Two pension plans are at issue: The Directed Account Plan, with a stipulated present value of $108,388.94; and the Fixed Benefit Plan, with a present value, according to the parties, of between $19,652 and $38,121. The evidence is undisputed that husband is fully vested in both accounts, that he is free to withdraw the full $108,388.94 from the Directed Account at any time, and that up until the dissolution order, all funds in both accounts had accrued during the marriage. The trial court also found that the Fixed Benefit Plan, although scheduled to begin disbursement when husband reached age 60, had a present cash surrender value of between $19,652 and $46,000, depending on the discount rate applied. Accordingly, the court held that both accounts were marital property and, through a Qualified Domestic Relations Order, ordered that the wife be paid 50 per cent of each plan commencing "at such time as [she] retires at age 59½; or

sooner if this 50 percent is converted to another form of retirement fund ..." and at such time as the husband "begins to receive benefits under the plan."

The husband admits that both accounts are marital property, but contends that the court erred in valuing and allocating the Fixed Benefit Plan. He claims that the trial court erred, first, in disregarding his substantial risk of forfeiture, since disbursement was scheduled not to begin for eighteen years and to end upon his death, and second, in failing to take account of the parties' relative contributions to the plan. While we disagree with these two arguments, we conclude that the allocation should be modified.

■ The only evidence presented on the retirement plans was a letter from husband's employer summarizing the benefits. The letter plainly states that funds from the Directed Account Plan "may be paid out upon Mr. McGinnis' request." The same statement is not made with regard to the Fixed Benefit Plan. Instead, the employer relates that this plan "will begin on his normal retirement at age 60, 10–1–03, and is payable for his lifetime only." Without further evidence to rebut the letter, the only inference to be drawn from it is that the Fixed Benefit Plan may not be paid out upon request, but rather is payable only when and if husband reaches the age of 60 in the year 2003. The trial court was thus in error in finding that the Fixed Benefit Plan had a current cash surrender value.

■ Because it did not affect the trial court's disposition of the pension funds, however, we find this error to be harmless. See *Newton Oil Co. v. Bockhold*, 115 Colo. 510, 176 P.2d 904 *appeal dismissed*, 331 U.S. 784, 67 S.Ct. 1205, 91 L.Ed. 1815 (1947) (a misunderstanding or misquotation of evidence is not ground for reversal, if the conclusion of the court is correct).

In disposing of a vested but unmatured pension plan "the principles of fairness and equity ... must attend the valuation process," *In re Marriage of Nelson*, 746 P.2d 1346 (Colo.1987), and the contingencies underlying the particular pension plan must be taken into account. *In re Marriage of*

*Grubb*, 745 P.2d 661 (Colo.1987). In the case of a pension plan inaccessible prior to the employee's distant retirement and terminable upon the employee's death, the risk of forfeiture is an important factor for the trial court to consider. *In re Marriage of Nelson, supra*. Thus, in such a case it would be inequitable to require an immediate, lump-sum payment of the present value of the plan unless the present value included the risk of forfeiture as a factor. *In re Marriage of Nelson, supra*.

Here, no lump-sum payment was ordered, and risk of forfeiture was taken into account in disposing of the pension benefits. Because wife has no right to her share of the pension until payments to husband commence, the risk is borne equally by both parties. Husband's argument to the contrary thus has no merit.

■ We also do not agree with husband that the court failed to consider the relative contributions of the parties. In its order, the trial court considered the parties' relative contributions, including the wife's contribution as a homemaker, in disposing of all marital property. Contrary to husband's assertion, there is no requirement, by either statute or case law, that the non-employee spouse must have contributed specifically to the pension plan.

■ We do find a lack of clarity in one particular of the trial court's disposition of the pension fund. The order requires deferred payment of 50 per cent of each pension account to wife. We note that, in at least the Fixed Benefit Plan, husband will continue to accrue benefits, to which wife is not entitled, after the marriage is dissolved. Because the wife's share of the pension benefits should be limited to a portion of those accrued during the marriage, rather than extending to a portion of those accrued subsequent thereto, *see In re Marriage of Grubb, supra*, the matter must be remanded for a modification of the order to so reflect.

## II.

Husband next contends that the trial court's property division as a whole was

unfair and inequitable because the court disregarded all of his evidence, including his contributions to the marital assets and the testimony of his appraiser. We disagree.

## A.

■ Division of marital property is a matter resting within the sound discretion of the trial court, and, when supported by competent evidence, will not be disturbed on appeal. *In re Marriage of Price*, 727 P.2d 1073 (Colo.1986). The distribution must be just and equitable, but need not be necessarily equal. *In re Marriage of Gercken*, 706 P.2d 809 (Colo.App.1985).

■ Here, the trial court's division of property is supported by both its findings and the evidence. In its order, the court set forth the criteria for regarding division of assets, including consideration of the contributions made by each party. In considering husband's contributions, it found that he had made mortgage payments on the family residence between the parties' separation and dissolution in the amount of $31,296, and stated that this contribution was taken into consideration in the property division. In view of photographs of the house and a ledger sheet of expenses, the court further found that husband had not spent substantial sums in maintaining either the house or other marital assets. The court considered and rejected husband's allegations that he had paid and given a car to his parents in exchange for their work in improving certain marital real estate. In light of these specific findings and the broad discretion afforded the trial court on matters of credibility, we cannot conclude that the court disregarded husband's contributions.

## B.

■ Husband contends that the trial court erred in rejecting his appraiser's valuation of the family farm and in failing to make specific findings to support the rejection. Again, we disagree.

The trial court's findings on the value of the farm are sufficiently specific to allow meaningful review, *see In re Marriage of Rose*, 40 Colo.App. 176, 574 P.2d 112 (1977), and are well supported by the record. In assessing the farm at $500/acre, the court had before it not only the testimony of each party's lay appraiser ($360/acre according to husband's, $500/acre according to wife's), but also evidence that the couple had paid $612.50/acre nine years earlier, and that husband recently had listed the property with a real estate agent for $1,100/acre. The record thus contains ample support for the trial court's conclusion.

## III.

Finally, husband contends that the trial court erred in its two contempt orders, which included an assessment of attorney fees against husband. We vacate the first order of contempt.

## A.

In its dissolution order, the trial court awarded attorney fees to wife with the following statements:

"There was sufficient evidence that [husband] was in contempt of court, that he did not cooperate with discovery and thus caused an increase in the amount of fees that would have been necessary to litigate this matter. Because of this fact, the court feels it is appropriate that $3,000 of the [wife's] attorney's fees shall be paid by the [husband]."

■ Under C.R.C.P. 107, there are two separate types of contempt procedures: one for misbehavior in the court's presence, and another for misbehavior out of its presence. When contempt is committed in the court's presence, it may be punished summarily, but when it is committed elsewhere, notice and a hearing are required. *In re P.R. v. District Court*, 637 P.2d 346 (Colo. 1981).

■ In both situations specific findings must be made: for contempt in the presence of the court, the judgment must recite the facts constituting the contempt, *Handler v. Gordon*, 108 Colo. 501, 120 P.2d 205 (1941); for contempt out of the presence of the court, the judgment must include, among other considerations, a finding that the court's order has not been

complied with. *People v. Razatos,* 699 P.2d 970 (Colo.1985). Compliance with the procedure governing contempt is essential before jurisdiction to punish for contempt attaches. *Urbancich v. Mayberry,* 124 Colo. 311, 236 P.2d 535 (1951).

Here, the trial court neither made specific findings explaining what contempt had occurred in its presence, nor gave notice and a hearing regarding contempt committed elsewhere. Its contempt order and accompanying attorney fees award, therefore, cannot stand.

Wife argues that the attorney fees were awarded not only under C.R.C.P. 107 because of husband's contempt, but also under C.R.C.P. 37(b) as a result of his failure to follow discovery procedures. While attorney fees could have been awarded pursuant to C.R.C.P. 37(b)(2) had husband refused to comply with an order compelling discovery, no such order was issued. Thus, this theory also fails to support the award.

#### B.

Husband contends that the fees and compensation awarded in a subsequent contempt hearing should also be vacated because the trial court improperly discredited his evidence. We conclude, however, that the court's assessment of credibility is supported by the record and its resultant contempt order well within its discretion.

The judgment is affirmed except as to the award of pension benefits and the first award of attorney fees for contempt. The judgment is reversed as to those two matters, and the cause is remanded to the trial court with instructions that the award of attorney fees in the Dissolution Order be vacated, and that the Qualified Domestic Relations Order be modified to clarify that wife's pension benefits are limited to 50 per cent of those benefits that accrued to husband during the marriage.

KELLY, C.J., and NEY, J., concur.