**In re the MARRIAGE OF Kay Ann GAVITO, Appellant,**

**and**

**Donald Richard Gavito, Appellee.**

**No. 88CA1452.**

Colorado Court of Appeals,
Div. III.

June 28, 1990.

Stark & Niermann, P.C., Barbara A. Stark, Denver, for appellant.

Bruno, Bruno & Colin, P.C., Louis B. Bruno, Lakewood, for appellee.

Opinion by Judge CRISWELL.

In this dissolution of marriage action, Kay Ann Gavito (wife) appeals the judgment with respect to the awards of property division, maintenance, and attorney fees. We reverse.

At the time of the decree, Donald Richard Gavito (husband) and wife were each 50 years old. Husband had worked for the Denver Police Department for 27 years and had achieved the rank of sergeant. During their child-rearing years, wife had worked at some part-time jobs, but she had remained in the home to raise the parties' three children. When permanent orders were entered, she had been working full time at Colorado National Bank for approximately 12 years; she was earning $2,030 per month, and husband was earning $3,429 per month.

The trial court found that the principal marital assets were the parties' two pension plans, each arising from their employment.

The husband's plan was vested, and pursuant to its terms, he was eligible to retire immediately, in which event he would receive $1,784 per month, but it was subject to a total divestment should the husband die before electing to retire. Based upon expert testimony that considered the husband's life expectancy and a discount rate, the trial court found that this plan had a present value of $283,695.

The wife's pension plan was vested, but she was not yet eligible to receive any benefits under that plan, and she would not be eligible to do so until she reached age 65. At that time, based upon the present vested interest, she would receive approximately $611 per month in retirement benefits. These benefits, like the husband's benefits, were subject to complete divestment in the event of her death prior to retirement. There was no direct evidence, however, as to the present value of the future payments under the wife's plan.

Because both plans were "vested," the trial court recognized that the vested benefits in each constituted marital property subject to division. *See In re Marriage of Grubb*, 745 P.2d 661 (Colo.1987). Further, it recognized that the "simplest way" to divide these assets would be to award one-half of the monthly income from each plan, when and as received, to each of the parties.

However, because the benefits under the husband's plan were not assignable, the court concluded that ordering him to pay one-half of the presently accrued monthly benefits, when and if husband retired and began to receive such benefits, might present "enforcement problems" in the future. It concluded, therefore, that the most equitable and practicable means of effecting a division of these assets would be to allow each party to retain the full interest in his or her individual plan. The court then attempted to place the wife on a "more equal footing" by giving the wife a greater share of the parties' other property.

The wife contends that the court's disposition of these two assets resulted in a disparate division of the marital estate that was not contemplated even by the trial court. However, in the absence of a present evaluation of the wife's pension

benefits, it is impossible for us to determine, with any degree of confidence, the nature of the division that the trial court effected. Indeed, we conclude that, unless a trial court can make a reasonable estimate of the present value of a presently vested, but unmatured, pension right, it has no basis for making a present distribution of that asset. Under such circumstances, it must adopt another method to distribute it.

When the supreme court in *In re Marriage of Grubb, supra,* recognized that a vested, but unmatured, pension right that was subject to divestiture by death prior to retirement was a marital asset, it recognized that the contingency of divestment must be taken into consideration in one of several ways. If the evidence permits, the court may consider actuarial tables and all the other circumstances in the case to evaluate "the probability that the employee-spouse will eventually exercise his or her rights under the retirement plan." After engaging in such an evaluation and calculating "the present value of the plan," the court may engage in a present distribution of the plan's benefits in much the same manner as the trial court attempted here. *In re Marriage of Grubb, supra. See In re Marriage of Gallo,* 752 P.2d 47 (Colo. 1988).

However, there may be considerations that render a present distribution impracticable. The *Grubb* court noted that a present distribution might not be practicable if the time that a vested right will mature is so far in the future that the contingency of divestment by death makes it difficult to place a present value on the retirement benefit, or if the present value of other marital property is insufficient to "offset" the present value of the pension. *See also In re Marriage of Nelson,* 746 P.2d 1346 (Colo.1987). Thus, *Grubb* specifically authorized a trial court to require that the interest in the pension acquired during the marriage be distributed at some future date when the funds become available.

However, in order for a trial court to make an equitable present distribution of pension rights, it is necessary for that court, first, to arrive at a present value of those rights. Absent such an evaluation, there exists no basis for the court to determine any proper offset, and without a finding of present value by the trial court, an appellate court would have an insufficient basis upon which to review any property division order. *See In re Marriage of Wildin,* 39 Colo.App. 189, 563 P.2d 384 (1977).

In this case, the trial court failed to determine the value of the wife's pension rights, but attempted nevertheless to make a present distribution of those rights. However, without the trial court's evaluation of those rights, we are unable to review the propriety of the court's property division order. We must, therefore, remand this cause to the trial court for it to reconsider its order, based on the evidence in the present record.

In doing so, the court may determine that there is sufficient evidence to allow it to place a present value upon the wife's present vested right. If so, nothing within this opinion will prevent it from adopting any appropriate method of distribution of that asset, including a present distribution. If it is unable to do so, however, the court will be required to adopt another method. In this respect, we do not envision any possible "enforcement problems" as being an insurmountable barrier to a future division of the benefits under either pension.

Further, the method of distribution of the wife's pension rights may have some influence upon the court's selected method of distribution of the husband's pension. Thus, upon remand the trial court may reconsider, to the extent it concludes that it is appropriate to do so, all of its prior property division orders. And, because the previous property division orders may have influenced the court's orders respecting maintenance and attorney fees, *see In re Marriage of Bowman–Barry,* 749 P.2d 465 (Colo.App.1987), those orders may also be reconsidered by the trial court upon remand.

Finally, in light of the foregoing conclusions, it would be premature for us to pass

upon the propriety of the trial court's orders respecting maintenance and attorney fees. Pending the trial court's reconsideration of all these matters upon remand, the present orders shall remain in full effect.

The judgment is reversed, and the cause is remanded to the trial court for further proceedings consistent with the views expressed herein.

TURSI and METZGER, JJ., concur.