25CA0440 Marriage of Scott 04-02-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0440
Weld County District Court No. 24DR30076
Honorable Todd Taylor, Judge

In re the Marriage of

Toni Scott,

Appellee,

and

Larry Scott,

Appellant.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE LIPINSKY
Welling and Tow, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 2, 2026

Law Offices of John Stehlik, P.C., John D. Stehlik, Greeley, Colorado, for Appellee

Larry Scott, Pro Se

¶ 1 Larry Scott (husband) appeals the trial court's permanent orders entered in connection with the dissolution of his marriage to Toni Scott (wife). We affirm.

## I. Background

¶ 2 Wife worked on the Harold Rhoades Farm (Rhoades Farm) for almost thirty years. Harold Rhoades conveyed an ownership interest in Rhoades Farm to wife in 2009 in gratitude for her years of work there. That interest included the property's associated mineral rights.

¶ 3 Husband and wife were married on November 11, 2011. (We refer to husband and wife jointly as "the Scotts.") In 2012 or 2013, wife conveyed to husband, without consideration, a co-ownership interest in her interest in Rhoades Farm, and they became tenants in common. (We refer to the two tenancies as "wife's interest" and "husband's interest," respectively.)

¶ 4 Wife leased the mineral rights to oil companies, from which she received monthly revenue payments of $3,000 to $5,000. Because the Scotts never owned a joint bank account, wife transferred one-half of those payments to husband each month.

¶ 5     Husband left wife after the Scotts experienced financial problems.  Husband's creditors subsequently obtained judgments against him and foreclosed on husband's interest.

¶ 6     Canoe Lake Development, LLC, paid $98,838.24 at a sheriff's sale to acquire husband's interest.  Wife entered into a tenancy-in-common agreement with Canoe Lake, which became her new cotenant.

¶ 7     Wife filed this dissolution of marriage proceeding in February 2024.  The court conducted the permanent orders hearing in January 2025.

¶ 8     At that time, wife had no income and was living on loans, including a $103,000 loan from Canoe Lake secured by wife's interest.  In addition, the Scotts owed substantial sums to the Internal Revenue Service (IRS).

¶ 9     During the permanent orders hearing, husband, appearing pro se, attempted to cross-examine wife about a case she had filed against Rhoades and the oil companies arising from problems with the legal descriptions of the mineral rights.  The court sustained wife's attorney's objection to such questions because, as the court noted, husband could not relitigate past cases.  The court rejected

husband's argument that not allowing him to ask wife about prior cases constituted "suppression of evidence."

¶ 10    In addition, at the permanent orders hearing, husband claimed that the Scotts owned other properties besides wife's interest.  But, as the court noted, husband did not provide any evidence to support this assertion.

¶ 11    As relevant to this appeal, at the conclusion of the hearing, the court ruled as follows:

> [The court] finds that — the marital assets of the parties at this point is — [wife's interest]. She owns . . . a half interest in [Rhoades Farm] as a tenant in common.
>
> [Husband]'s interest in [Rhoades Farm] as a tenant in common has been foreclosed on and was purchased at a sheriff sale.  A copy of the sheriff's deed is in evidence. . . .  Clearly that interest is now owned by an entity called [Canoe Lake].  That entity loaned [wife] $103,000 against [wife's interest].
>
> . . . .
>
> [The court] finds that under all the circumstances that have been provided [it]'s fair and equitable to allocate . . . the sole marital asset[, wife's interest,] to [wife].
>
> Because [the court] is allocating all [remaining Rhoades Farm] interest to her, [the court] finds it's fair and equitable that she be responsible for the $103,000 loan against it.  So she's

3

solely responsible for that. [The court] allocates the IRS debit [sic] equally between the parties. It was incurred during the marriage apparently because they received royalties or at least they were supposed to receive royalties that were supposed to come to both of them. So that debt is divided equally.

¶ 12　On appeal, husband contends that the trial court made three errors. First, husband argues that the court impermissibly "suppressed evidence" when it precluded him from asking wife about prior cases. Second, husband argues that the court did not equitably divide the marital property. Third, husband asserts that the court erred by failing to address wife's alleged fraud.

## II.　Analysis

### A.　Issue Preclusion

#### 1.　Standard of Review

¶ 13　"We defer to the court's factual findings if they have record support. But we review de novo whether the court correctly applied the law." *In re Marriage of Medeiros*, 2023 COA 42M, ¶ 58, 534 P.3d 531, 542-43 (citation omitted).

¶ 14　We disagree with wife that husband did not preserve his issue preclusion argument for appellate review. Husband referred to issue preclusion in filings in the trial court and at the permanent

4

orders hearing.  *See Madalena v. Zurich Am. Ins. Co.*, 2023 COA 32, ¶ 50, 532 P.3d 776, 788.  But husband's prior references to issue preclusion do not necessarily mean that he presented a meritorious issue preclusion argument in the trial court.

### 2.    The Court Did Not Err by Limiting Husband's Cross-Examination of Wife

¶ 15    Husband argues that, under the doctrine of issue preclusion, judgments previously entered against him were relevant to the permanent orders, and, therefore, the court erred by not allowing him to cross-examine wife about prior cases.  He specifically asserts that the court's "suppression of evidence" made it impossible for him to argue that Rhoades and Thomas Todd, as trustee of the Harold Rhoades Living Trust, were barred "from further litigation [against him] due to issue preclusion."  Husband argues that, as a consequence of the trial court's ruling, he will "face even more civil cases in the future, [the ruling] clouds [his] title to his properties even more, and [it] interferes with his ability to achieve clear title to his properties."

¶ 16    We conclude that husband's issue preclusion argument is more accurately characterized as an improper attempt to collaterally attack prior judgments.

¶ 17    The preclusion doctrines are meant to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Salida Sch. Dist. R-32-J v. Morrison*, 732 P.2d 1160, 1163 (Colo. 1987) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)).

¶ 18    Issue preclusion "prevents the [relitigation] of discrete issues." *Nation SLP, LLC v. Bruner*, 2022 COA 76, ¶ 17, 519 P.3d 392, 395 (quoting *Foster v. Plock*, 2017 CO 39, ¶ 13, 394 P.3d 1119, 1123). "Under this doctrine, once a particular issue is finally determined in one proceeding, *parties to this proceeding* are barred from [relitigating] that particular issue *again in a second proceeding*, even when the actual claims for relief in the two proceedings are different." *Id.* (emphases added) (quoting *Foster*, ¶ 13, 394 P.3d at 1123).

¶ 19    Husband cannot properly invoke issue preclusion against Rhoades and Todd, however, because neither is a party to this

dissolution of marriage proceeding. *See id.* Rather, husband seeks to challenge judgments previously entered against him — in other words, to collaterally attack those judgments.

¶ 20 A collateral attack on a judgment is "an attempt to avoid, defeat, or evade [the judgment] or deny its force and effect." *Brennan v. Grover*, 404 P.2d 544, 546 (Colo. 1965) (quoting 49 C.J.S. *Judgments* § 408(b) (1947)). A party may collaterally attack a judgment entered in a separate proceeding only if the court that entered such judgment lacked jurisdiction over the parties or claims. *See id.*

¶ 21 Husband, however, does not assert that the courts in the prior cases lacked jurisdiction over the parties or the claims in those matters. Accordingly, the trial court did not err by precluding husband from cross-examining wife about those prior cases.

### B. Division of Marital Property

#### 1. Standard of Review

¶ 22 We disagree with husband that we review the court's division of property de novo. "The division of marital property is left to the district court's discretion." *LaFleur v. Pyfer*, 2021 CO 3, ¶ 61, 479 P.3d 869, 885. Therefore, "[w]e will not disturb the district court's

division of property 'unless there has been a clear abuse of discretion,' that, when viewed in relation to the property division as a whole, 'affects the substantial rights of the parties.'" *Id.* (citation omitted) (quoting *In re Marriage of Balanson*, 25 P.3d 28, 35-36 (Colo. 2001)); *accord In re Marriage of Mann*, 655 P.2d 814, 816 (Colo. 1982).

### 2. The Court Did Not Err When It Distributed the Marital Property

¶ 23     Husband contends that the trial court's division of the marital property was erroneous. We disagree.

¶ 24     District courts have "great latitude to effect an equitable distribution [of marital property] based upon the facts and circumstances of each case." *In re Marriage of Hunt*, 909 P.2d 525, 537 (Colo. 1995). "The key to an equitable distribution is fairness, not mathematical precision." *In re Marriage of Gallo*, 752 P.2d 47, 55 (Colo. 1988). Accordingly, "[t]he distribution must be just and equitable, but need not be necessarily equal." *In re Marriage of McGinnis*, 778 P.2d 281, 284 (Colo. App. 1989); *accord In re Marriage of Wright*, 2020 COA 11, ¶ 3, 459 P.3d 757, 759.

¶ 25    Section 14-10-113(1), C.R.S. 2025, provides that the district court "shall set apart to each spouse his or her property and shall divide the marital property, without regard to marital misconduct, in such proportions as the court deems just after considering all relevant factors." One such relevant factor is "[t]he contribution of each spouse to the acquisition of the marital property." § 14-10-113(1)(a).

¶ 26    In allocating wife's interest to wife, the court considered that the judgment liens were recorded against husband's interest alone. Husband lost husband's interest as a result of those judgment liens and the ensuing sheriff's sale. The sheriff's deed that wife's attorney introduced into evidence confirmed that Canoe Lake purchased husband's interest at the sheriff's sale. (Husband contends that the sheriff's sale was "illegal," but he does not point to any evidence to support this assertion, and, moreover, he cannot collaterally attack the judgment through which he lost husband's interest.)

¶ 27    Considering each party's contribution to the acquisition of their respective interests in Rhoades Farm, *see* § 14-10-113(1)(a), the court reasonably concluded that it was equitable to award wife's

9

interest to wife, while also allocating to her the indebtedness to Canoe Lake, *see In re Marriage of Wright*, ¶¶ 3, 11, 459 P.3d at 759, 761.

¶ 28    In addition, husband argues that the court abused its discretion by failing to consider in the permanent orders "other properties the parties own[ed]." However, husband did not provide any evidence that the parties owned other properties. Rather, the evidence introduced at the permanent orders hearing reflected that wife's interest was the only property interest that either husband or wife owned.

¶ 29    (Husband also asserts, in a single sentence, that the court "failed to correctly calculate spousal maintenance." We decline to reach this undeveloped assertion. *See Woodbridge Condo. Ass'n v. Lo Viento Blanco, LLC*, 2020 COA 34, ¶ 41 n.12, 490 P.3d 598, 611 n.12, *aff'd*, 2021 CO 56, 489 P.3d 735.)

¶ 30    Because evidence in the record supports the court's award of marital property, *see* § 14-10-113(1), it did not err by allocating wife's interest to wife, *see In re Marriage of Hunt*, 909 P.2d at 537.

## C.    Fraud

¶ 31    Husband contends that wife committed fraud during the permanent orders hearing.  We decline to address the issue because it was not preserved for our review.

¶ 32    To preserve an issue for appeal, a party must bring the issue to the district court's attention, giving the court an opportunity to rule on it.  *Berra v. Springer & Steinberg, P.C.*, 251 P.3d 567, 570 (Colo. App. 2010).

¶ 33    Husband never argued in the trial court that wife committed fraud at the permanent orders hearing, and the court did not raise the issue on its own.  *See In re Marriage of Pawelec*, 2024 COA 107, ¶ 38, 562 P.3d 106, 115-16 (holding that to preserve an issue for appeal, it must be presented in such a way that the district court has an opportunity to rule on it); *see also In re Marriage of Fabos*, 2019 COA 80, ¶ 31 n.4, 451 P.3d 1218, 1225 n.4 (appellate court will not address an argument raised for the first time on appeal). The fraud issue is therefore not properly before us.

## III.    Disposition

¶ 34    The judgment is affirmed.

JUDGE WELLING and JUDGE TOW concur.

11