In re the MARRIAGE OF Miriam Lorraine PERLMUTTER, Petitioner,

and

David Perlmutter, Respondent.

No. 87SC138.

Supreme Court of Colorado, En Banc.

May 1, 1989.

Bonnie M.J. Schriner, Denver, for petitioner.

Arthur M. Schwartz, Cyndy D. Schwartz, Irvin Borenstein, Arthur M. Schwartz, P.C., Denver, for respondent.

MULLARKEY, Justice.

We granted certiorari to review an unpublished decision of the court of appeals which reversed a trial court decision awarding increased alimony to the Petitioner Miriam Perlmutter. We reverse.

I.

The parties were married in 1943 and divorced in 1966. The original court orders in the divorce provided for the division of

property, child support, alimony and attorneys' fees. David Perlmutter appealed the division of the property and the court of appeals reversed in *Perlmutter v. Perlmutter*, 480 P.2d 587 (Colo.Ct.App.1971) (not selected for official publication). When it considered the case on remand in 1971, the trial court awarded alimony to Miriam Perlmutter of $130 per month. In 1978, she moved to increase the alimony award and was awarded $195 per month. In 1983, she filed a second request for increased alimony which was granted in 1985 and that is the case now before us. The trial court found that the circumstances of the parties had changed so that the award of alimony should be further modified and, accordingly, it increased the alimony to $600 per month.

The court of appeals reversed on the basis that there was insufficient evidence to support an increase in alimony. It stated:

> The record is devoid of evidence concerning wife's needs or expenses in 1978. Although husband's income may have increased since then, the ability to pay increased support alone is insufficient to justify modification.... In this respect, we also note that wife's income has increased slightly since the 1978 modification. Without evidence of her increased need between 1978 and 1985, reflecting a change in circumstances, the modification cannot stand.

*Perlmutter v. Perlmutter*, 85CA0446, slip op. at 4 (Colo.Ct.App. Jan. 29, 1987) (citations omitted). We granted certiorari to consider whether the court of appeals erred by substituting its own findings of fact for those of the trial court.

## II.

■ Both the trial court and the court of appeals applied the proper legal standard to this case. Modification of an award of maintenance or alimony is governed by the laws in effect at the time the action was commenced. § 14–10–133, 6B C.R.S. (1987). Because the original divorce action here predated the enactment of the Uniform Dissolution of Marriage Act, § 14–10–101 to –133, 6B C.R.S. (1987), the court awarded alimony rather than maintenance. Under our cases, alimony is based on the financial conditions, abilities and needs of the parties at the time of the hearing without regard to past or future conditions. *Watson v. Watson*, 135 Colo. 296, 303, 310 P.2d 554, 559 (1957). Modification of the alimony award is determined by what is reasonable and just as changed circumstances may warrant.[1] *Bradshaw v. Bradshaw*, 626 P.2d 752, 754 (Colo.Ct.App. 1981); § 46–1–5(1), C.R.S. (1963) (repealed in 1971).

■ Determination of whether circumstances have changed is within the sound discretion of the court based on the facts presented and, absent an abuse of discretion, its ruling will not be disturbed on review. *Elmer v. Elmer*, 163 Colo. 430, 432, 431 P.2d 470, 471 (1967); *Moses v. Moses*, 155 Colo. 340, 343, 394 P.2d 601, 602 (1964); *see also Bradshaw*, 626 P.2d at 754. On appeal, we must construe the evidence in the light most favorable to the prevailing party. *Gleason v. Gleason*, 162 Colo. 212, 215, 425 P.2d 688, 690 (1967); *Liggett v. Liggett*, 152 Colo. 110, 112, 380 P.2d 673, 675 (1963).

Here, the trial court made the following factual findings in support of its award of increased alimony:

3. The Petitioner married the Respondent when she was 18 years old, and in her 23 years of marriage to the Respondent, her main work was as a housewife. She is now 59 years old.

4. From the original divorce the Petitioner received certain assets. Both of those major assets, homes, went into foreclosure because the Petitioner could not make the payments. The Petitioner realized the sum of $518.00 from one house sale (1969) and approximately $4,000.00 cash and $4,500.00 promissory

---

1. The present standard for modification of maintenance payments requires a "showing of changed circumstances so substantial and continuing as to make the terms unconscionable." § 14–10–122(1)(a), 6B C.R.S. (1987).

note from the sale of the second home in March, 1970.

5. The Petitioner was involved in a car accident in February 1983 and required the use of a walker until August 1983. Her remaining disabilities now prevent her from doing any heavy housekeeping.

6. a.) The Petitioner's income in 1984, in her best months, was no greater than $145.00 per month ($25.00 from her son and about $30.00 per week babysitting). She was also receiving food stamps and the alimony sum of $195.00 per month.

b.) The Petitioner's current income is $195.00 per month alimony and approximately $87.00 per month from babysitting. It may be possible for her to increase her babysitting, but she cannot do any heavy housework with that because of her injuries.

7. The reasonable monthly expenses of the Petitioner are $800.00 per month.

8. The Respondent will be 69 years old in May, 1985. The Respondent's income in 1978 was $2,600.00 per month. In 1983 his income was at least $5,600.00 per month according to his own tax returns. In 1985 his income is, at a minimum, $3,400.00 per month.

9. The Respondent was not totally candid with this Court when he was testifying about his income. There were items about his own income which he should know about, and probably did know about, but was unable to testify about these items to the Court (e.g. his company pays $10,000.00 per year for insurance and the Respondent didn't know what that was for or anything about it). The Respondent has been in the insurance business since 1944 and owns his own company (an insurance agency) in which he is the sole shareholder.

These findings have ample support in the record.

■ Miriam Perlmutter's financial condition was poor in 1978 and showed a marked deterioration by 1985. She had no education or vocational training beyond high school and had spent her married years caring for the couple's four children and the household. Her work experience during that time was limited to occasional typing in her husband's insurance office and a short stint working in retail sales while the couple was separated. After her divorce, Ms. Perlmutter worked as a babysitter and as a housecleaner. When the alimony award was increased to $195 per month in 1978, she was receiving public assistance and was represented in the alimony proceedings by a Legal Aid attorney. She had a regular babysitting job which paid her $50 per week and, according to her testimony at the 1985 hearing, she expected to earn enough money to support herself with the $195 per month alimony. In 1978, she was able bodied.

In 1983, however, Ms. Perlmutter was seriously injured when she was hit by an automobile. She was treated at the University of Colorado Health Sciences Center as an indigent patient and surgeons inserted a metal plate, secured with pins, in her leg to enable her to walk. Because of her injuries, she was confined to a walker for a period of time and was unable to work for one year. During this time, she was largely dependent on the charity of relatives for her housing and basic necessities.

According to the evidence, her injuries have had a continuing effect. Her small financial resources were depleted; she no longer owned a car. Physically, she was less able to travel by bus, her principal mode of transportation, in order to find work. She was unable to perform some of the bending, lifting and stooping activities associated with housecleaning and babysitting. The trial court found that her 1985 monthly income exclusive of alimony was $87. She was eligible for food stamps and was represented in this case through the legal assistance program of the Colorado Women's Bar Association. Her testimony indicated that she lived very frugally, if not penuriously, in a one-room apartment with a minimum of clothing. She had outstanding debts for her medical care and, because she had no insurance or savings, she was unable to have follow-up surgery to remove the pins inserted in her leg.

The trial court found that David Perlmutter was not candid with the court regarding

his income. His personal income tax return showed a significant increase in his reported income between 1978 and 1983, the most recent tax return submitted to the trial court. In addition, Mr. Perlmutter had owned his own insurance business since 1944 and was the sole stockholder in the corporation. There is substantial evidence in the record that Mr. Perlmutter received additional income from other sources and had personal expenses paid through his business. He had income producing assets and savings. He enjoyed a comfortable standard of living, complete with a new luxury car and a vacation home.

The trial court acted within its discretion in determining that the increased alimony was reasonable and just as required by the changed circumstances. The court of appeals erred by substituting its factual findings for those of the trial court and, for that reason, we reverse. The case is remanded to the court of appeals with directions to return the case to the district court for reinstatement of its order increasing the alimony to $600 per month.