**In re the MARRIAGE OF Karon M. BLAKE, Appellee,**

and

**Larry A. Blake, Appellant.**

**No. 89CA1133.**

Colorado Court of Appeals,
Div. II.

Oct. 25, 1990.

Rehearing Denied Dec. 13, 1990.

Certiorari Denied March 25, 1991.

Law Offices of Sandra J. Pfaff, Sandra J. Pfaff, Denver, for appellee.

Law Offices of Jerry N. Snyder, Jerry N. Snyder, Mary L. Everstine, Denver, for appellant.

Opinion by Chief Judge STERNBERG.

The principal issue in this appeal is whether a nonemployee-spouse's interest in a vested pension plan may be ordered to be paid by the employee-spouse before that spouse actually retires and begins to receive his or her own retirement benefits.

We affirm the trial court ruling that such payment may be ordered.

The decree here at issue dissolved a marriage of approximately 31 years duration. At the time of decree, Larry A. Blake (husband) was 51 years old and Karon M. Blake (wife) was 50 years old. Husband was employed as an assistant principal with the Denver Public School system and earned $3,880 per month gross income. Wife had been a homemaker during the marriage, raising the parties' two children. At the time of hearing, she was a graduate of the Denver Paralegal Institute and was earning $1,238 per month, working a 32–hour week for a sole practitioner.

Husband's pension plan was 100% vested. The trial court found that it had a fair market value of $164,000 before taxes, and after taxes, a value of $118,000. Both employee and employer contributions were made to the pension.

· The husband's earliest retirement date at which time he could receive the full amount of his entitlement, without incurring penalties for early withdrawal, was age 55. Retirement was not mandatory at any age, and the pension benefits would not be lost if husband died prior to retirement.

Husband testified that he did not expect to retire until sometime between the ages of 60 and 65. An employee-benefits administrator testified that, if husband were to terminate his employment on the date of hearing, he would be paid monthly installments of $1,872. This amount was a reduced amount, since husband theoretically would be retiring prior to his earliest retirement date.

Regardless of the date of retirement, all retirement checks would be made payable to husband because of the anti-alienation provisions of the pension plan which, as a governmental plan, was not subject to a qualified domestic relations order (QDRO) 29 U.S.C. § 1003(b) (1988). If husband were to die shortly after the decree was entered, his beneficiary would receive a lump-sum payment of $55,889, representing his contributions to the plan.

The trial court determined that each party had substantially contributed to the acquisition of marital assets. It also concluded that it would make, not an equal but, a fair and equitable distribution of property. Besides the pension, the other major asset of the parties was the family home, in which the court determined the parties had an equity of $54,750. Since neither party desired to retain the home, the court ordered it sold. Of the sale proceeds, husband's mother was to be paid $2,000 to satisfy a prior tax loan, and the remainder was to be divided equally.

Since the court could not order a QDRO, it entered what it labeled a "relatively innovative order." It ordered husband to pay wife $936 per month, commencing June 1, 1992, and payable until her death and regardless of wife's remarriage. This sum represented one-half of the amount of husband's entitlement if he had retired as of the date of the decree. It also ordered husband to designate wife as the irrevocable beneficiary for the amount of $936 per month under Plan B of the pension plan options, so that wife would continue to receive retirement benefits upon husband's death. To offset the anticipated tax liability to husband, the court characterized the monthly payments of $936 as "maintenance in gross."

Finally, the court also awarded wife temporary spousal maintenance of $350 per month for a period of three years, ending May 1992.

## I.

First, husband asserts that the trial court abused its discretion in excluding certain evidence which he claimed was relevant to the issue of wife's underemployment. He also contends that wife failed to show a need for maintenance or an inability to find other suitable employment. We disagree.

Husband presented the testimony of the director of placement from the Denver Paralegal Institute. That witness expressed the opinion that wife could have been earning an average salary of $21,140 per year. Thus, any additional evidence regarding the issue of wife's underemployment would have been cumulative, and it therefore properly could be excluded by the trial court. *See* CRE 403.

Moreover, husband's evidence was directly contradicted by wife's testimony. The credibility of witnesses and the probative effect and weight to be given to the evidence are matters within the province of the trial court. *In re Marriage of Hoyt,* 742 P.2d 963 (Colo.App.1987). Thus, we will not disturb the court's determinations regarding wife's employment and need for maintenance, which are supported by the evidence. *See In re Marriage of Perlmutter,* 772 P.2d 621 (Colo.1989).

In addition, considering the length of the marriage, wife's limited recent experience in the workplace, and husband's financial resources, we conclude that the evidence supported the award of short-term maintenance. *See In re Marriage of Sinn,* 696 P.2d 333 (Colo.1985); *In re Marriage of Mitchell,* 195 Colo. 399, 579 P.2d 613 (1978).

## II.

Husband also contends that the court erred in awarding wife a portion of the pension as "maintenance in gross" in advance of his anticipated retirement date. While conceding that the court was attempting to divide the present value of the pension, husband asserts that the order awards wife substantially more than one-half of the present value of the pension. In addition, although husband agreed at trial that the amount of $936 per month was a fair amount to award wife as her share of the pension, he also asserts that he should not be required to pay that sum until such time as he actually retires, or age 65, whichever is earlier.

The testimony and documentary evidence presented by the administrator of husband's pension plan reveals that husband would have received the sum of $1,872 if he were to retire on June 1, 1989, within two weeks of the date of dissolution.

The supreme court in *In re Marriage of Grubb,* 745 P.2d 661 (Colo.1987) recognized that several alternative methods could be utilized to determine the value of a vested and unmatured retirement plan. *See also In re Marriage of Nelson,* 746 P.2d 1346 (Colo.1987). Although the court in *Grubb* outlined the present value and reserved

jurisdiction methods as two of the more frequently used methods that have proved effective in other jurisdictions, it expressly noted that it did not intend to create inflexible rules of property valuation, and stated that a "trial court can also consider some other method of valuation that might better address the *needs* and *interests* of the parties." (emphasis added)

Based on this premise and persuasive authority from other jurisdictions, we conclude that the trial court's order here was within its discretion to determine the appropriate method for valuing a pension and distributing it in an equitable manner. *See In re Marriage of Fenimore,* 782 P.2d 872 (Colo.App.1989). Once the court based its distribution on the monthly present value of the plan, it was within its discretion to engage in a present distribution of the benefits, *see In re Marriage of Gavito,* 794 P.2d 1377 (Colo.App.1990), even though such distribution was not to be immediately effected.

Here, an award of other marital property to wife to offset the present value of husband's pension was not a viable solution because there were insufficient assets to approximate the present lump-sum value of husband's pension plan. The reserve jurisdiction method appears to have been equally unsatisfactory to the court because, although both parties were approaching early retirement age, husband's retirement plans were distant.

Other jurisdictions have determined that the employee-spouse's decision not to retire upon becoming eligible to do so deprives the nonemployee-spouse of the immediate enjoyment of separate property. They recognize that the timing of the receipt of, and the control of, assets are important aspects to the value of those assets. This is especially true for the age group eligible for retirement benefits; to them, the current value of the benefits may be much more important than a greater future value. *See Koelsch v. Koelsch,* 148 Ariz. 176, 713 P.2d 1234 (1986); *In re Marriage of Gillmore,* 29 Cal.3d 418, 174 Cal.Rptr. 493, 629 P.2d 1 (1981).

We agree with the court in *Gillmore, supra,* that requiring husband to pay wife

her share of the monthly pension before actual retirement does not force husband to retire; nor does it penalize him for his decision to continue working. Rather, husband remains able solely to decide when he wishes to retire. If he retires at his earliest retirement date (age 55), husband could pay wife her portion of the retirement benefits directly out of his receipt of such benefits. On the other hand, he may choose to defer his own retirement and, instead, use separate financial resources to comply with the court order. The record reveals that he would have sufficient income to do this without impoverishing himself. By doing so, husband has the advantage of allowing his retirement benefits to continue to grow in amount, based on both his increased length of service and on the "inherent" or "intrinsic" quality of the pension plan. *See Koelsch v. Koelsch, supra.* Husband can decide, for himself, whether the present value of the benefits, or their greater delayed value, is more important to him.

Moreover, the court's order providing wife with installment payments of her share of the pension is not unlike the situation in which one spouse is awarded the family home or business, and the other is given a note payable over a period of time. *See In re Marriage of Bayer,* 687 P.2d 537 (Colo.App.1984); *In re Marriage of Garcia,* 638 P.2d 848 (Colo.App.1981).

We are not persuaded by husband's contention that *Koelsch* and *Gillmore* are distinguishable because, unlike the situation here, the wife's interest in those pension plans would be divested if the husband died prior to retirement. Although we recognize that the risk of forfeiture was a material factor in those decisions, an equally important concern to both courts was to guarantee the nonemployee-spouse the maximum enjoyment of her interest in the pension benefits.

In addition, husband's assertions that there is an element of speculation as to the growth of each party's interest and that wife is elevated to a vastly superior position relative to the pension benefits are without merit. Wife's share of the pension is fixed at $936 per month; therefore, any increases in monthly entitlement will belong exclusively to husband. *See Wallace v. Wallace,* 5 Haw.App. 55, 677 P.2d 966 (1984).

Therefore, in summary, we hold that although the reserve jurisdiction method could have been employed by the trial court, nevertheless, the court was not required to adopt that method. Further, since the evidence of the specific retirement amount which husband would, and could, receive upon retirement as of the date of decree was presented, it was within the court's discretion to award wife a share of the benefits through the use of installment payments when lump-sum distribution at the time of decree was impractical. *See In re Marriage of Grubb, supra.*

Judgment affirmed.

DUBOFSKY and ROTHENBERG, JJ., concur.