In re the Marriage of Donald P. HUGHES, Appellant–Respondent,

v.

Mary L. HUGHES, Appellee–Petitioner.

No. 48A05–9111–CV–389.

Court of Appeals of Indiana, Third District.

Oct. 26, 1992.

Transfer Denied Dec. 30, 1992.

**4.** Wera denied molesting A.W. or R.W.

**382**

Franklin I. Miroff, Monty K. Woolsey, Miroff Cross & Ruppert, Indianapolis, for appellant-respondent.

James A. Reed, Indianapolis, Brenda S. Farrell, Anderson, for appellee-petitioner.

HOFFMAN, Judge.

Appellant–Respondent Donald P. Hughes appeals the trial court's division of marital property. Donald questions the inclusion of an early retirement benefit as marital property.

The evidence relevant to the appeal discloses that the parties were married in June 1959. Mary filed for a dissolution of marriage on October 31, 1990.

During the marriage, Mary worked for a period of five years prior to the birth of the parties' only child, a son. Mary did not return to the work force until their son began school. Mary worked at a bank for twelve years, until their son began college in North Carolina. Because their son was active in theatrical productions for the school, Mary terminated her employment with the bank so that she and Donald could attend their son's productions.

Next, she obtained a job with a savings and loan which was taken over by FSLIC. Mary was offered a position in Chicago after the takeover. Mary declined the position because of Donald's long-term employment with General Motors. Mary returned to a secretarial position which she had previously held at a heating and cooling company. Because of the seasonal nature of the company's work, Mary often worked only four days per week.

At the time of the dissolution proceedings, Mary had no work-related benefits other than a disability policy for which she paid $8.80 per month. Mary was ineligible for her employer's health insurance coverage because she was diagnosed with malignant melanoma in 1988. Under Donald's General Motors Health Insurance, Mary's medication cost $18.00 per month. Without the benefit of insurance, Mary's medication will cost $179.00 per month.

During the proceedings, Donald described his job at General Motors, insuring acceptable standards in the production of manufactured parts, as one growing within the manufacturing industry. At the time of the final hearing on April 26, 1991, Donald was 55 years old. He had accrued 36.2 years of credited service with General Motors entitling him to General Motors Hourly Pension Plan benefits which were included as marital property and which are not at issue on appeal. At issue are benefits available to Donald pursuant to an early retirement supplement which is an incentive to retire prior to age 62.

Pursuant to Donald's request, the court entered findings of fact and conclusions of law on July 31, 1991. The following findings are pertinent to Donald's pension benefits:

"6. Respondent, as a result of his employment with General Motors, has a vested interest in the General Motors Hourly Pension Plan. If Respondent had terminated his employment as of the date of filing in this matter, he would have been entitled to draw $1,600.00 per month (lifetime and early retirement benefits) until October 1, 1991, then $1,700.00 per month until October 1, 1992, the[n] $1,800.00 per month until his age sixty-two. Thereafter, he would draw $1,026.74 per month (which may change in the future as a result of contract changes providing for cost of living or other changes).

\*   \*   \*   \*   \*   \*

PENSION

The Court concludes that as of the time of filing, Respondent had a right to receive pension or retirement benefits as a result of his employment with General

Motors through the General Motors Hourly Pension Plan that are not forfeited upon termination of his employment. The Court also concludes that Respondent cannot be required to retire at the present time nor, in fact, is there any assurance that he will retire by age sixty-two or any other age. Respondent's retirement benefits have been accrued during the marriage by the efforts of both parties, including the contribution of Petitioner through her subordination of her employment opportunities to the employment of Respondent, and also through her child-rearing and family responsibilities. As a result, it would be unfair for Respondent to have total control of whether, if ever, Petitioner would enjoy any portion of this retirement benefit, which was earned during the marriage.

The Court, therefore, concludes that the entire early retirement supplement portion of Respondent's General Motors Hourly Pension Plan Retirement Benefit should be set over to Respondent as his sole and separate property, said benefit having a value of $65,499.21. The Court also concludes that so long as Respondent continues to be employed, he shall pay to Petitioner the sum of $800 each month, effective the first of the month following the entry of Decree in this matter. This sum represents one-half of the basic or lifetime benefit presently available to Respondent until his age sixty-two, together with one-half of his early retirement supplement.

If the Respondent continues employment after age sixty-two, he shall pay Petitioner $513.37 per month, effective the first of the month following his sixty-second birthday. It is the Court's intention by this order that each month Respondent purchase from Petitioner her interest in this asset. . . ."

Due to the relative disparity in earning potential, the fact that Mary has always subordinated her employment to Donald's for familial reasons, Mary's lack of employment-related benefits, and Mary's health, the trial court determined that an unequal

division of assets would be just and reasonable. This appeal ensued.

As restated, Donald raises two issues for review:

(1) whether the early retirement supplement constitutes marital property subject to division where Donald has not expressed any intention to retire; and

(2) whether the trial court erred by entering, as an alternative, an order assigning a portion of the pension benefits to Mary by a Qualified Domestic Relations Order.

■ IND.CODE § 31-1-11.5-2 (1988 Ed.) defines "property" in the dissolution context. In pertinent part, the statute states:

"(d) The term 'property' means all the assets of either party or both parties, including: . . .

(2) the right to receive pension or retirement benefits that are not forfeited upon termination of employment[.] . . ."

Donald complains that the early retirement supplement does not meet the definition of "property" because it has no value if he does not retire prior to age 62. Here, the supplement meets the strict definition of "property." The supplement is a pension or retirement benefit which, at the time of the dissolution, Donald had a right to receive and which would not be forfeited upon termination of his employment. The fact that attaining the age of 62 without retiring would cause forfeiture of the supplement requires its exclusion according to Donald. However, Donald overlooks the fact that the supplement is a benefit which he has a right to receive at any time during a seven-year period from age 55 to age 62, including the time of the pendency of the dissolution proceeding.

The statutory definition of property is broad and inclusive, "providing that 'all' assets 'including' various pension interests are to be considered marital property subject to division." *Huber v. Huber* (1992), Ind.App., 586 N.E.2d 887, 889. Pursuant to IND.CODE § 31-1-11.5-11 (1988 Ed.), governing the disposition of marital assets,

the trial court may dispose of property owned by either spouse prior to the marriage, property acquired by either spouse in his or her own right after the marriage and prior to final separation, and property acquired by the joint efforts of the parties. *Id.* "Moreover, the 'one pot' theory of [the statute] specifically prohibits the exclusion of any asset from the scope of the trial court's power to divide and award". *Id.* Thus, the trial court must determine the distribution of assets available to the parties at the time of the dissolution proceeding.

As noted by the trial court in the present case and discussed in *In re Marriage of Blake* (1990), Colo.App., 807 P.2d 1211, 1213–1214:

> "[R]equiring husband to pay wife her share of the monthly pension before actual retirement does not force husband to retire; nor does it penalize him for his decision to continue working. Rather, husband remains able solely to decide when he wishes to retire....
>
> Moreover, the court's order providing wife with installment payments of her share of the pension is not unlike the situation in which one spouse is awarded the family home or business, and the other is given a note payable over a period of time.... [Citations omitted.]"

*Id.*

Here, the trial court was presented with stipulated evidence of the value of the supplement. The court awarded the asset to Donald, and then as in the case of a residence or other illiquid asset, Mary was awarded installment payments to satisfy her interest in the asset. The trial court's order does not force Donald to retire. Rather the order recognizes that such assets, acquired by the joint efforts of both parties, must be included in the "marital pot" and cannot be subject to distribution by the whim of the employed spouse.

As a subissue, Donald complains that the court implicitly intended that Mary receive 55% of the assets but that inclusion of four years and three months of employment and additional pension benefits accumulated prior to the parties' marriage was improper. According to Donald, the inclusion skewed the overall distribution of the assets in favor of Mary because the court implicitly intended that Mary receive 55% of the assets. As noted above, IND.CODE § 31–1–11.5–11 allows a court to dispose of property owned by either spouse prior to the marriage. *See Huber, supra,* 586 N.E.2d at 889. Further, the court specified, with accompanying findings, that the presumption in favor of equal distribution of assets would not be just and reasonable in the present case. However, the court did not state an intention to award Mary only 55% of the marital assets.

■ Also, Donald contends that even if the supplement was subject to distribution, ordering installment payments of $800.00 per month is not just or proper in light of Donald's financial circumstances. Donald argues that his $40,000.00 per year income will be largely consumed by the court's assignment to him of $17,000.00 of the parties' $18,500.00 in debts incurred during the marriage. Donald overlooks the fact that the bulk of the debt is attributable to one asset which was awarded to him, a trailer valued at $14,700.00 subject to a $12,000.00 debt. It is within the parties' discretion to retain the assets they were awarded or to liquidate them in order to meet their financial obligations.

The party challenging the court's division of the marital assets is charged with overcoming the presumption that the trial court considered all evidence and properly applied the statutory factors. *Livingston v. Livingston* (1992), Ind.App., 583 N.E.2d 1225, 1227–1228. Donald has failed to overcome the presumption in the present case.

Next, Donald contends that the trial court erred in entering an alternative consisting of a Qualified Domestic Relations Order. According to the briefs of the parties, after the record of proceedings was filed, the QDRO was rejected by the plan administrator for Donald's pension plan. As such, the parties admit that any contention of error is now moot. Thus, the issue shall not be addressed.

There being no finding of error, the judgment of the trial court is affirmed.

Affirmed.

GARRARD and CHEZEM, JJ., concur.