Argued and submitted March 9, reversed and remanded October 5, 1981

In the Matter of the Marriage of

## MINNIS,
*Appellant,*
*and*
## MINNIS,
*Respondent.*

(No. D7905-64169, CA 18921)

634 P2d 259

Gerald C. Doblie, Portland, argued the cause for appellant. With him on the brief was Doblie, Francesconi & Welch, P.C., Portland.

Peter E. Baer, Gresham, argued the cause and filed the brief for respondent.

Before Joseph, Chief Judge, and Thornton and Richardson, Judges.

THORNTON, J.

**THORNTON, J.**

The sole assignment of error in this dissolution proceeding is wife's contention that the trial court erred in assigning to husband's retirement pension rights under the Public Employees Retirement System (PERS) a value equal only to the total contributions ($24,806.43) he had made to his retirement account as of the date of dissolution.

The parties were married for 23 years. Husband is a 50 year old high school vice-principal whose current annual salary and fringe benefits total $30,467.48. Historically, this salary has increased about 8 percent annually on the average. He was awarded the family home in which he lives with their two sons, both of whom are college students, and only one of whom lives at home full time. Husband attributed $275 of his stated monthly expenses of $1,841 to support of their children and contributions to their education expenses.

■       Wife, who was 50 years of age at the time of the decree, had been declared permanently and totally disabled by the Workers' Compensation Board as a result of her back injuries, the last of which occurred in March, 1978. She claims monthly expenses of $1,541. Her monthly income of $1,176 is comprised of $780 from that permanent total disability award, $189 from Social Security on account of her disability and $207 in disability benefits from wife's own PERS account. Under that system, if an employe becomes permanently disabled prior to the earliest retirement age *(i.e.,* 55 in wife's case — ORS 237.121(1)), she is entitled to a lifetime annuity based on the amount of her contributions to the date of disability and a pension based on employer contributions which she would have received had she worked until age 60. ORS 237.171(1). Such disability payments are in lieu of all other PERS benefits.[1]

---

[1] Husband contends that wife's PERS disability benefits should have been treated as a marital asset. Wife's options under the plan are foreclosed and the benefits she receives are in the form of monthly income with no survivorship benefits. This income was presumably taken into account in determining the need for spousal support, and we perceive no need to value it as an asset, which would involve multiplying her monthly payments times her life expectancy and reducing that figure to present value.

■ In addition to other assets wife was given a judgment of $20,000. The record does not show whether this was intended by the trial court to offset the pension rights awarded to husband, which the court valued at $24,806.43, the amount of his contributions up to the date of the dissolution, or was simply a balancing figure to arrive at an overall equitable decision. The judgment was subject to 9 percent interest from the date of the decree and was payable at $200 per month or on demand at wife's election. The court also awarded her $100 per month permanent spousal support.[2]

---

[2] Because we remand this case for a redetermination of the value of the PERS benefits, the court may reevaluate the property division as well as the award of spousal support in light of the following.

Husband argues that we should include in wife's property award 1) $2,500 withdrawn by wife for personal and litigation expenses and 2) $12,328 representing the present value of her right to $100 a month permanent spousal support. As to the first, it is *de minimis;* even if it had been expressly included in the award to wife, we would still consider the distribution equitable. As to the second, husband puts the cart before the horse. In some cases, spousal support has been used to balance disparities in the property distribution *(see Maurer and Maurer,* 49 Or App 355, 619 P2d 964 (1980)), but the normal approach is to divide the marital property first and, if each party receives sufficient income producing assets to support himself or herself in a manner not overly disproportionate to the lifestyle enjoyed during the marriage, no spousal support is justified. *Kathrens and Kathrens,* 47 Or App 823, 615 P2d 1079, *rev den* 290 Or 211 (1980). Spousal support is mandated only where one party is, by comparison, disadvantaged in terms of maintaining a prior lifestyle. Support in those instances is ordered, not to equalize the property distribution, but in discharge of the obligation of the advantaged spouse to support the disadvantaged one.

Husband contends that *Monaghan and Monaghan,* 45 Or App 535, 609 P2d 822 (1980), precludes the award of both permanent spousal support and an interest in the PERS account. In *Monaghan,* wife was awarded a judgment of $9,750 and permanent spousal support of $400 per month. We held that this in effect gave wife a double recovery from the same fund, since husband would have to rely on his retirement benefits to pay the spousal support. 45 Or App at 539.

We do not read *Monaghan* as creating a rule that permanent support and a judgment for an interest in retirement benefits are mutually exclusive. Such a rule would be inconsistent in some cases with the general approach to spousal support discussed above. In *Rogers and Rogers, infra,* we stated:

"* * * In determining whether a lump sum award is appropriate, courts should consider the burden it would place on the paying spouse in view of required child support, *spousal support,* and other property distribution. * * *" 45 Or App at 896. (Emphasis added.)

We note, however, factual dissimilarities between this case and *Monaghan:* 1) the amount of spousal support is considerably less in this case than in *Monaghan;* 2) wife here has a substantial permanent income of her own; and 3) the total value of the assets here was roughly two and one half times those distributed in *Monaghan* and includes a rental house capable of generating income in addition to retirement benefits.

Under the PERS plan, a person eligible for retirement benefits may receive the following retirement allowance package: 1) a refund annuity based on his total contributions to the fund plus interest; 2) a life pension paid from employer contributions; and 3) an additional life pension for certain kinds of prior service, which is not relevant in this case. ORS 237.147. The employe has the option to withdraw all his contributions plus interest in a lump sum, ORS 237.155(2)(a); he has no such option with respect to the life pension based on employer contributions. He may elect, however, if he takes part of his entire benefits as an annuity, among several options, in lieu of the standard refund annuity. He may convert the refund annuity to a non-refund annuity with payments based on his actuarial life expectancy. ORS 237.155(1) (Option 1). He may also have the amount of his total retirement allowance recomputed actuarially so that it continues, not only for his life, but for the life of a designated beneficiary, or so that it continues for the life of the beneficiary following his death, but in half the amount. *Id.* (Options 2 and 3).

Basically, the life pension is computed by multiplying the number of years an employe contributed to the fund times one percent of his "final average salary" (defined in ORS 237.003(12)), but, in any event, it cannot be less than the refund annuity based on his own contributions. ORS 237.147(2)(a)(D) and (2)(b). Entitlement to these benefits commences upon reaching compulsory retirement age (in this case, age 70 — ORS 237.129(2)), and the refund annuity is actuarially computed based on life expectancy at that age. ORS 237.147(1). If an employe voluntarily retires before the compulsory retirement date, he may be entitled to his full pension and annuity without any actuarial reduction, based on the fact that the refund annuity will likely be paid over a period of time longer than that used as the actuarial basis for computing the amount of the annuity. In husband's case, he may voluntarily retire at age 58 and receive full benefits. ORS 237.121(2)(b). The earliest retirement age is age 55, but the benefits would then be reduced to "the actuarial equivalent of the service retirement allowance at the compulsory retirement age. * * *" ORS 237.121(1). Finally, an employe who has been a member of the plan for more than five years and who leaves

public service prior to age 55 may choose to leave his contributions in the fund until age 55 or later and receive benefits based on his and the employer's contributions as though he had worked in public employment until retirement. ORS 237.111(1).

■     In *Rogers and Rogers,* 45 Or App 885, 890, 609 P2d 877, *modified* 47 Or App 963, 615 P2d 412, *rev den* 289 Or 659 (1980), *modified* 50 Or App 511, 623 P2d 1108, *rev den* 290 Or 853 (1981), we distinguished three separate periods in a beneficiary's interests under a retirement plan: they may be unvested, vested but not matured, or matured. Husband's rights as to his own contributions are, of course, both vested and matured, in the sense that he has the right to withdraw the full amount plus interest at any time he terminates service. The valuation of the pension rights in this case implies, however, that none of the potential benefits husband could receive at age 55 or later are vested. This is not the case, because husband could have terminated employment as of the date of the dissolution, left his contributions in the fund until age 55 or later and then received lifetime benefits based on those and his employer's contributions. In other words, the retirement benefits are vested, but not matured. It is not proper to assume, for purposes of computing the value of these rights, that husband would immediately leave public service and withdraw his contributions or to ignore the vested pension benefits. *Rogers and Rogers, supra,* 45 Or App at 897. The primary purpose of the plan is to provide income upon retirement. Husband contributed to the plan for 15 years during their marriage. It is unlikely (and there is no evidence to suggest) that husband plans to retire, at least before age 55, and thereby deprive himself of the benefits of the plan.

The PERS representative who testified offered evidence of husband's benefits under two alternatives: 1) lump sum return of contributions plus the life pension and 2) the life pension plus a refund annuity. The computations were based on several assumptions: that husband's gross income and rate of contributions would remain constant; that the statutory scheme would not change; and, apparently, that husband would elect an option which would maximize his own retirement income *(i.e.,* that he would not choose a

form of annuity with a survivorship provision). Under the first alternative, husband would receive $42,800 in a lump sum and $336 per month if he retires at 55; at age 60, he would be entitled to $72,183 and $626 per month. Under the second alternative, husband's monthly payment would be $673 per month for retirement at 55 and $1,252 at age 60. The witness specifically testified that he had made no computations based on the assumption that husband would retire immediately and begin drawing benefits later.

■ The trial court's use of the amount of husband's contributions as the present value of his pension rights was erroneous. We reverse and remand. That valuation affected the distribution of property, so the trial court is entitled to reconsider the entire decree.

Reversed and remanded. No costs to either party.