In re the MARRIAGE OF Jan
Lea NORDAHL, Appellee
and Cross–Appellant,

and

Gary Lynn Nordahl, Appellant
and Cross–Appellee.

No. 90CA1554.

Colorado Court of Appeals,
Div. V.

June 4, 1992.

Law Office of Barbara M. Jacobi, Barbara M. Jacobi, Denver, for appellee and cross-appellant.

L. Frank Bergner, Jr. & Associates, P.C., L. Frank Bergner, Jr., Aurora, for appellant and cross-appellee.

Opinion by Judge ROTHENBERG.

In this dissolution of marriage action, Gary Lynn Nordahl, (husband) appeals from the trial court's distribution of marital property, and Jan Lea Nordahl (wife) cross-appeals the maintenance and child support orders. We affirm in part, reverse in part, and remand.

The twenty-one year marriage of the parties was dissolved in 1990. Wife, then 39, was unemployed and attending college to obtain an undergraduate degree. Husband, then age 43, had been a teacher with the Aurora Public Schools for nineteen years. Husband had contributed $32,777 to the Public Employees' Retirement Association (PERA), and his employer had contributed approximately $51,000.

The trial court valued the PERA pension at $84,000, awarded the pension to the husband, and distributed marital property of equivalent value to the wife. Each party received marital property worth approximately $138,000. The court also awarded the wife temporary spousal support for a period of seventeen months.

## I.

Neither party contests the trial court's present distribution of the husband's pension. Husband, however, challenges the trial court's valuation of the pension and contends that the erroneous valuation resulted in a disparate division of the marital estate. We disagree.

In order to divide a spouse's retirement pension at the time of dissolution, the trial court must determine its present cash value. *In re Marriage of Gavito*, 794 P.2d 1377 (Colo.App.1990). The type of valuation methodology employed depends largely on the pension plan being evaluated. *See* 3 J. McCahey, *Valuation & Distribution of Marital Property* §§ 45.06[3] & 45.08 (1991). Retirement pensions usually fall into two broad categories: "defined contribution" and "defined benefit" plans.

A defined contribution (or individual account) plan maintains a separate account for each participant which is funded by employer and/or employee contributions. The balance in each participant's account is determined by the amount of contributions, plus interest and net earnings. It is this amount which is ultimately distributed to the employee as his pension. For this reason such pension's present value is normally the amount currently credited to the employee's account; however, the face value of the account may be discounted for the possibility of forfeiture if the pension is nonvested or nonmatured. The majority of profit-sharing pension plans are, in reality,

defined contribution plans. *See In re Marriage of McGinnis,* 778 P.2d 281 (Colo.App. 1989).

In contrast, a defined benefit plan, such as the PERA retirement pension here, specifies a fixed benefit that will be paid as a life-time annuity upon the employee's retirement. The plan establishes a benefit formula for computing the amount of future retirement installments to be payable commencing on a future date. Such benefits are usually based upon years of service and some measure of the employee's average monthly or yearly compensation. *See In re Marriage of Blake,* 807 P.2d 1211 (Colo.App.1990). Government retirement plans are almost always defined benefit plans. *See generally* 3 J. McCahey, *supra,* § 45.08 (1991).

Generally, there are no separate individual participant accounts in a defined benefit plan; instead, the present value of such pension is determined by applying a series of actuarial and investment assumptions relating to the employee's life expectancy and probable retirement age to the contractual or statutorily awarded benefit. The periodic retirement benefit entitlement accrued during marriage becomes part of an income flow commencing at retirement and continuing until death. The marital portion of the income flow is then discounted to a present value. *See* 3 J. McCahey, *supra,* § 45.23 (1991); 3 A. Rutkin, *Family Law & Practice* § 37.11[2][a] (1991); *see generally Fondi v. Fondi,* 802 P.2d 1264 (Nev.1990); *Pulliam v. Pulliam,* 796 P.2d 623 (Okl. 1990).

Here, the husband has a vested, unmatured defined benefit pension. At the time of permanent orders, he was 42 years old and had completed 18.917 years of employment service with the Aurora Public Schools.

If the husband had decided to terminate his employment before completing twenty years of service, he either could have withdrawn his employee contributions to the plan or could have left his contributions invested in the plan. If he left his contributions intact, he would then have received a reduced benefit at age sixty, or a full benefit at age sixty-five.

After the husband completes twenty years of service, he can receive a reduced benefit at age fifty-five, or a full benefit at age sixty. After completing thirty years of employment, husband can retire at age fifty-five with a full retirement annuity. *See* § 24–51–602, C.R.S. (1991 Cum.Supp.); § 24–51–604, C.R.S. (1988 Repl.Vol. 10B).

Each party presented the opinion testimony of an expert witness. Both experts applied the PERA benefit formula to the husband's highest average salary and the nineteen years of service credit husband accrued during the marriage. *See* § 24–51–603(1)(a), C.R.S. (1991 Cum.Supp.). However, the experts arrived at different valuations of the pension plan based upon differing assumptions regarding the length of husband's post-dissolution employment and his probable age at retirement. Also, the experts applied a slightly different percentage in analyzing the discounting formula.

Premised on the assumption that husband will complete thirty years of employment service and retire at age 55 (the earliest retirement date at which he can receive the full amount of his entitlement without incurring penalties for early withdrawal), the wife's expert gave his opinion that the value of the marital portion of husband's pension discounted to the date of dissolution was $83,052.

In contrast, husband's expert based his valuation on the assumption that husband had only 18.917 years of service credit and that he would not complete twenty years of service. Husband's expert also assumed that husband would retire at age sixty (the earliest possible retirement date for an employee with more than five and less than twenty years of service) and that husband would thus receive a reduced monthly benefit. Based upon those assumptions, husband's expert gave his opinion that the marital portion of husband's pension on the date of dissolution was worth $45,272.

The trial court accepted the valuation by wife's expert and found the value of the pension was $84,000.

On appeal, husband contends that in valuing the marital property portion of a PERA pension, the trial court must assume that the employee-spouse (here, husband) separated from employment on the date of the dissolution of marriage. Otherwise, according to husband, the non-employee-spouse's marital portion will be inflated due to post-dissolution employment. We disagree.

Consistent with §§ 14–10–113(3) and 14–10–113(5), C.R.S. (1987 Repl.Vol. 6B), the trial court must, and did, calculate the husband's projected monthly pension based on the retirement benefit accrued *during the marriage*. However, husband's argument ignores the important distinction between using the date of dissolution as a cutoff date for the valuation of the marital interest in the pension, and in making the computations which ultimately determine the present valuation of that interest.

■ Because the husband has a defined benefit pension, the present value of the marital interest in the pension, *i.e.*, the value of the pension on the date of the dissolution, must take into consideration the earliest projected maturity, or payable, date of the pension. *See generally* McGuane & Zuber, *Valuation of Pension & Profit–Sharing Benefits*, 3 J.Am.Acad. Matrimonial Law 13 & 25–30 (1985). The marital interest in the pension must be measured using the pension that will be received not upon dissolution but, rather, upon the assumed normal future retirement. *See* McCahey, *supra*, at § 45.23.

The same contention raised by husband was rejected by the Oregon court of appeals which stated:

It is not proper to assume for purposes of computing the value of these rights, that husband would immediately leave [his employment] and withdraw his contributions or to ignore the vested pension benefits.... The primary purpose of the plan is to provide income upon retirement. Husband contributed to the plan for 15 years during their marriage. It is unlikely (and there is no evidence to suggest) that husband plans to retire, at least before age 55, and thereby deprive himself of the benefits of the plan.

*In re Minnis*, 54 Or.App. 70, 634 P.2d 259, 262 (1981); *see also Fondi v. Fondi, supra; Pulliam v. Pulliam, supra.*

Here, as in *In re Minnis, supra*, there was no evidence as to when husband intended to retire or terminate his employment. To the contrary, he testified that he planned to teach during the 1990–1991 school year and would thereby complete at least twenty years of covered employment.

Further, here, the evidence showed that after twenty years of covered employment, the earliest husband can retire with normal or full pension benefits is age 55. *Cf.* § 24–51–604, C.R.S. (1988 Repl.Vol. 10B), governing reduced retirement benefits. Additionally, there was no evidence of any likelihood that husband's employment would be terminated, either voluntarily or otherwise and, thus, there was no reason to consider discounting the pension's present value for that possibility. *See Cunningham & Cunningham*, 74 Or.App. 311, 702 P.2d 1157 (1985).

■ The rule adopted in *In re Minnis, supra*, appears to be the generally accepted rule and we are persuaded that it is consistent with the philosophy of previous Colorado cases regarding the equitable division of property rights. We hereby adopt the *Minnis* rule in Colorado and hold that, for the purpose of valuing an employee-spouse's vested pension benefits in a defined benefit pension plan, such as PERA, it is not proper to presume that the employee-spouse will immediately leave employment on the date of the dissolution. Rather, we will presume that the employee-spouse will retire on the earliest date upon which the employee-spouse can retire with a normal retirement and a full pension. *See In re Minnis, supra.* This calculation will not affect the right of the employee-spouse to voluntarily choose to retire at any time either before or after that date. It merely serves to fix the non-employee-spouse's interest in the marital portion of the employee-spouse's pension as of the date of the dissolution.

Applying that criterion to the circumstances before us, we conclude that wife's expert properly computed the present value of the marital portion of husband's probable future stream of income based on the statutory mortality table and the criteria set forth in the PERA law. Thus, the trial court did not err in basing its valuation on the testimony of the wife's expert and in rejecting the husband's evidence of value. *See In re Marriage of Bayer,* 687 P.2d 537 (1984).

## II.

Husband next challenges the trial court's valuation of a car wash business owned by the parties. Again, we find no error.

It is within the trial court's discretion to choose the valuation of one party over the other, or to arrive at its own reasonable determination of value. *In re Marriage of Martin,* 707 P.2d 1035 (Colo.App.1985). Unless the trial court's findings are clearly erroneous, its valuation is binding on review. *In re Marriage of Van Genderen,* 720 P.2d 593 (Colo.App.1985).

Here, neither party presented expert evidence of the car wash's value, and the parties' own valuations were sharply conflicting. However, the trial court had before it evidence of the parties' capital investments, the value of the fixed assets, and the business' annual gross and net earnings. The record thus supports the trial court's valuation. *See In re Marriage of McGinnis, supra.*

## III.

On cross-appeal, wife argues that the trial court abused its discretion in limiting spousal maintenance to only seventeen months. We agree.

The amount and duration of spousal maintenance is determined pursuant to the statutory criteria set forth in § 14–10–114(2), C.R.S. (1987 Repl.Vol. 6B). A maintenance award is not limited to satisfying basic or survival needs. *In re Marriage of Olar,* 747 P.2d 676 (Colo.1985). Nor is a dependent spouse required to deplete her share of the marital property in order to qualify for maintenance. *In re Marriage of Eller,* 38 Colo.App. 74, 552 P.2d 30 (1976).

In limiting maintenance to seventeen months, the trial court erred by considering only the amount of marital property awarded to the wife. The order is devoid of any consideration of the wife's age or her limited employment skills and experience. Also, the court erred by arbitrarily setting a six-month time limit following the completion of wife's undergraduate degree for her to become fully self-sufficient.

The record reveals that the wife worked during the first twelve years of the marriage at low paying jobs to help support the family and assisted the husband while he finished college and obtained a master's degree. The parties anticipated that wife would complete college and obtain professional employment. *See In re Marriage of Marshall,* 781 P.2d 177 (Colo.App.1989). Wife testified without contradiction that the job market in her field of study was "saturated," that she was unlikely to obtain salaried employment with a bachelor's degree in financial planning, and that without a teaching certificate or a master's degree, it would take her "many years" to build a clientele sufficient for her to become self-supporting. She would not be able to obtain a teaching certificate for about three additional years. It is further undisputed that her highest earnings since the parties' child was born in 1980 was $300 per month as a part-time church secretary, and that these earnings occurred before she became a full-time student.

During their marriage, the parties enjoyed a comfortable standard of living. The husband has been employed for nineteen years and earns a salary plus additional business income sufficient for him to meet his own needs while assisting the wife in becoming self-sufficient. *See In re Marriage of Sinn,* 696 P.2d 333 (Colo.1985); *see also In re Marriage of Caufman,* 829 P.2d 501 (Colo.App.1992).

Given these circumstances, we conclude that the record does not justify the court's limitation on maintenance. *See In re Mar-*

*riage of Sinn, supra.* Accordingly, that portion of the maintenance award limiting it to seventeen months must be reversed, and the cause remanded with directions that the trial court reconsider the duration of the award consistent with the evidence of record and the statutory criteria under § 14–10–114(2).

### IV.

Next, wife argues that the trial court erred by imputing income of $1,000 per month to her in determining child support for the parties' minor son. We agree this was error.

Initially, we note that the trial court correctly imputed $1,000 monthly for the wife's receipt of maintenance. *See In re Marriage of Sewell,* 817 P.2d 594 (Colo. App.1991). However, it abused its discretion when it imputed an *additional* $1,000 per month based upon the wife's "ability to work."

Parents share an obligation to support their children to the best of their abilities, and the trial court may interpret one parent's lack of initiative in finding or keeping work as a voluntary refusal to fulfill a support obligation. *See* § 14–10–115(7)(a), C.R.S. (1987 Repl. 6B); *Overstreet v. Overstreet,* 693 S.W.2d 242 (Mo. App.1985); *Rapson v. Rapson,* 165 Colo. 188, 437 P.2d 780 (1968); *In re Marriage of Beyer,* 789 P.2d 468 (Colo.App.1989).

Here, however, there is no evidence in the record to support the conclusion that wife was voluntarily unemployed or underemployed. Rather, the evidence showed that she was attending college full time, maintaining a 3.5 grade point in her effort to become financially independent, and she is the primary custodian of the parties' minor son. She further testified that it would take her much longer than three additional years to become self-supporting if she had to attend night school and that because of her age, she would be at a great disadvantage in entering the job market. Moreover, since 1980, her highest income was $300 per month. In sum, we conclude that there is no record support for imputing an additional $1,000 per month to her.

The imputation of income under these particular circumstances unfairly penalized the wife's effort at self-sufficiency and is contrary to the public policy expressed by the General Assembly of encouraging the financial independence of dependent spouses. *See* § 14–10–114(2). It also circumvented the general public policy under § 14–10–102(2)(b), C.R.S. (1987 Repl.Vol. 6B) of mitigating the harm to spouses and children caused by the dissolution of marriages.

Accordingly, the child support order cannot stand and, on remand, the trial court is directed to vacate the $1,000 income imputed to the mother, to recalculate child support using the applicable guidelines, and to adjust the child support order retroactively to the entry of permanent orders.

That portion of the decree awarding maintenance and child support is reversed, and the cause is remanded for the entry of new orders consistent with the directions contained herein. The remainder of the judgment is affirmed. The existing maintenance and child support awards shall remain in effect pending the entry of new orders by the trial court.

STERNBERG, C.J., and PLANK, J., concur.