25CA0458 Marriage of Wardell 03-26-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0458
Douglas County District Court No. 23DR591
Honorable Andrew Baum, Judge

In re the Marriage of

Jaclyn Schell Wardell,

Appellant,

and

Bryce Nielsen Wardell,

Appellee.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE JOHNSON
Pawar and Gomez, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 26, 2026

Schaffner Law LLC, Joseph Maher, Greenwood Village, Colorado, for Appellant

Kumpf Charsley & Hansen, LLC, Robert E. Wells, Englewood, Colorado, for Appellee

¶ 1    In this dissolution of marriage case between Jaclyn Schell Wardell (wife) and Bryce Nielsen Wardell (husband), wife appeals the portion of the district court's permanent orders relating to the division of property and the court's denial of her requests for maintenance and child support.  We conclude that the district court did not err in its division of property, but we reverse the court's ruling with respect to its denial of maintenance and child support.  Therefore, we affirm in part, reverse in part, and remand the case to the district court to conduct further proceedings consistent with this opinion.

## I.    Background

¶ 2    Husband and wife divorced in 2024 after a nearly thirteen-year marriage.  During the marriage, the parties had three minor children.  The parties agreed to share equal parenting time and decision-making responsibility for the children.

¶ 3    After a contested hearing, the district court entered written permanent orders concerning, as relevant here, the division of the parties' marital property, spousal maintenance, and child support.  The court did not award wife maintenance or child support.  Wife

subsequently filed a motion for post-trial relief under C.R.C.P. 59, which the court denied.

¶ 4    Wife now appeals, contending that the district court erred by (1) failing to divide all the marital property; (2) ordering a sale of the marital home but not accounting for the costs of a sale in dividing the marital property; (3) denying her maintenance; and (4) awarding her no child support by deviating downward from the statutory guidelines.

## II.    Division of Marital Property

¶ 5    Wife claims the district court reversibly erred in its division of the marital property by (1) failing to value and equitably divide all the marital property as required under section 14-10-113, C.R.S. 2025; and (2) ordering the sale of the marital home without accounting for the costs of a sale.  We disagree with the first contention and conclude the second was harmless error.

### A.    Additional Facts

¶ 6    Husband and wife held a number of assets and debts at the time of their divorce, which neither disputed were marital property. The district court divided the assets and debts, reflected in its property division spreadsheet.  As relevant here, the parties had a

marital home, and husband started a business during the marriage, Omnis Pest Control Inc., which also included Wardell Holdings and Omnis Montana. Husband requested that the court order the sale of the business or award wife a portion of the holding company. He opposed a lump sum award or monthly payments from the operating account.

¶ 7 The court, adopting husband's expert's opinion, valued the business at $1,621,279. It also estimated the net equity of the marital home to be $366,274.

¶ 8 The court awarded the business interests — including the associated assets and debts — to husband, and it ordered the marital home sold with the net proceeds awarded to wife. To effectuate an equitable division of the assets, the court ordered husband to pay wife $5,000 a month in "equalization payments" for 125.5 months as "the only practical way to allocate to [w]ife her share of [the business interests]." The court's division of property of these and other assets resulted in husband receiving about $14,000 more than wife in the division of property. The court's allocation of property is as follows:

|  | Marital Value | Husband | Wife |
|---|---|---|---|
| Real Estate | $366,274 | | $366,274 |
| Business | $1,621,279 | $993,779 | $627,500 |
| Vehicles | $56,093 | $15,219.50 | $40,873.50 |
| Bank Accounts | $26,544 | $10,245 | $16,299 |
| Investments | $9,874 | $9,874 | |
| Retirement Accounts | $39,927 | $31,651 | $8,276 |
| Personal Property | $9,500 | $6,500 | $3,000 |
| Debts | ($11,903) | ($1,396) | ($10,507) |
| **TOTAL** | **$2,117,588** | **$1,065,872.50** | **$1,051,715.50** |

¶ 9 Wife claims, and husband agrees, that the district court failed to account for two categories of additional marital property: (1) uncashed checks in husband's possession in the total amount of $10,872.84; and (2) an additional 401(k) account under husband's name in the amount of $18,323.44 — together totaling $29,196.28. The total value of the marital property, not including these unaccounted-for assets, was $2,117,588.

### B. Standard of Review and Applicable Law

¶ 10 A district court has "discretion to determine an equitable division of the marital assets and debts," and we will not disturb its

4

decision "absent a showing that the court abused that discretion." *In re Marriage of Capparelli*, 2024 COA 103M, ¶ 7. A court abuses its discretion when "it acts in a manifestly arbitrary, unfair, or unreasonable manner, or when it misapplies the law." *In re Marriage of Herold*, 2021 COA 16, ¶ 5. We defer to a court's factual findings "when supported by the record." *Capparelli*, ¶ 8. The "key to an equitable distribution is *fairness*, not mathematical precision." *In re Marriage of Hunt*, 909 P.2d 525, 537-38 (Colo. 1995).

## C. Analysis

¶ 11    Wife contends that the district court reversibly erred because in its division of the marital property it (1) failed to account for the two assets identified above, resulting in a windfall for husband; (2) failed to account for other assets belonging to the businesses; (3) allowed husband to produce late the value of Omnis Montana, which prevented wife from disputing his valuation; and (4) ordered a sale of the marital home, which wife would receive the net equity from, without factoring in the costs of a sale. She claims that these errors led to an inequitable division of the marital property. We disagree.

¶ 12     First, although the district court did not account for husband's uncashed checks and his additional 401(k) account, this error was harmless, as it involved a de minimis amount.

¶ 13     If a district court's error in dividing the marital property "affects only a small percentage of the overall marital estate, such an error may be deemed to have been harmless and thus does not require reversal." *In re Marriage of Balanson*, 25 P.3d 28, 36 (Colo. 2001).  If the court's errors, when viewed in the aggregate, affect a large percentage of the marital estate, remand is required.  *Id.*

¶ 14     As mentioned, the total value of the marital estate, excluding the uncashed checks and additional 401(k) account, was over $2.1 million.  The combined value of unaccounted-for assets, the checks and the additional 401(k) account, was $29,196.28.  Taken as a percentage of the overall marital property, only 1.36% of the total estate was unaccounted for.  Thus, the court's error in failing to consider the uncashed checks and the 401(k) account was harmless.  *See id.* at 38 (suggesting that an error affecting less than two percent of the overall marital estate would be harmless).

¶ 15     Second, wife claims that Omnis Montana, trucks owned by Omnis Montana, and the bank account for Wardell Holdings were

excluded from the valuation of the marital property, which led to an undervaluation of the businesses and a windfall to husband. But this claim is not supported by the record — the district court allocated "Omnis, including Omnis Montana, Wardell Holdings, *and all assets held by these three companies*," to husband. (Emphasis added.) The court acknowledged that wife argued that the value of the businesses had increased because of the trucks purchased and additions to Omni's checking account after the appraisal. And it noted that six trucks were "all used solely by Omnis," so the court found them "included in . . . the value of Omnis and reallocated to husband as part of Omnis. The [c]ourt will exclude their values from its [marital balance sheet]." Thus, the value of Omnis Montana, the Wardell Holdings bank account, and the alleged additional trucks were contemplated by the court in its valuation of the businesses. The total net value of the businesses, the district court found, was $1,621,279. This finding is supported by the record, so we defer to it. *See Capparelli*, ¶ 8.

¶ 16    Related to the business, wife also argues that husband's untimely disclosure of his interests in Omnis Montana deprived her of an opportunity to value the asset or to have it included in the

7

property division valuation. But wife proceeded to final orders despite husband's late disclosure of that entity. She has not directed us to, nor can we find, any place in the record where she raised this objection below, allowing the court an opportunity to rule on it. Thus, because she is raising it for the first time on appeal, we do not address it. *See Marcellot v. Exempla, Inc.*, 2012 COA 200, ¶ 11 (we generally will not address for the first time on appeal issues not raised in or decided by the district court).

¶ 17 Finally, husband claims wife failed to preserve her argument that the district court should have considered the costs of a sale of the marital home when assigning the value of the net equity wife would receive. Wife points to the parties' joint trial management certificate, where she requested that the residence be sold, that she receive the first $300,000 of a sale, and that any remaining proceeds or deficits be shared equally between the parties. And she also points to her closing argument at the hearing, where she noted that the residence was not tied to Omnis and could be sold with wife receiving "the sales proceeds to secure necessary funds to accomplish an equitable division of property," and that "[c]osts of

8

sale, including potential capital gains taxes[,] are applicable only if the asset is actually being sold."[1]

¶ 18    We conclude that these references are sufficient to preserve a claim that the district court erred by not factoring in the costs of a sale of the marital home. But we nonetheless conclude that any error was harmless. Wife estimated the net equity of the home after closing costs would be $300,000, meaning that $66,274 should have been discounted by the district court. Adding this to the error with the uncashed checks and retirement account totals about 4.3% of the overall marital estate. We acknowledge that this is a higher percentage than 1.36, and it becomes a much closer case of whether this is harmless error. But we cannot say that the error rises to the level that other divisions of this court have found to be not harmless. *See, e.g.*, *Balanson*, 25 P.3d at 36 (concluding that the district court's combined errors in the division of property were not harmless when they affected over twenty percent of the overall marital estate); *In re Marriage of Zappanti*, 80 P.3d 889, 893 (Colo.

---

[1] Of note, wife's reference to costs of sale was only to rebut husband's claim that he was entitled to a deduction in the value of Omnis due to capital gains taxes.

9

App. 2003) (holding that an error in failing to set aside $400,000 of $600,000 pension as separate property was not harmless).

¶ 19    Because the district court's division of the marital property was equitable, we affirm that portion of the permanent orders.

### III.    Spousal Maintenance

¶ 20    Wife argues the district court erred by denying her maintenance under section 14-10-114, C.R.S. 2025.  We agree.

### A.    Additional Facts

¶ 21    The district court determined that husband's gross income was $16,350 per month, which included $8,667 as a salary from the business and $7,683 of shareholder income, which husband testified he typically reinvested in the business.  The court determined that wife's gross monthly income from being a dental assistant on a full-time basis was $3,987.  Before considering the monthly equalization payments, the district court found wife's monthly shortfall was $3,182.  The court then noted that, as a result of the division of the marital property, wife would receive a car worth $33,000; the net equity from the sale of the marital home — over $360,000 — and over $600,000 in value from Omnis (paid out in $5,000 monthly equalization payments for 125.5

months).  As a result, the court determined that the "additional $5,000 installment allows [w]ife to meet this shortfall and realize a monthly excess of $1,818."

¶ 22     The court found that the monthly equalization payments "provide[] a means to support [wife] financially until she returns to college as planned and is able to earn significantly more income."  It further found that wife could choose to use the monthly equalization payments to pay for expenses, invest, or save for the future and could use the net equity from the sale of the marital home to reduce her monthly mortgage payment.  Husband, the court found, still had his salary to live on, while the $5,000 installment would come from his additional shareholder income from the business interests.  The court also found that, while husband received "over $16,000 of [gross monthly income], half of this is shareholder income which he will have to use to pay the installment payment and reinvest to continue to grow Omnis."  The court concluded, "Practically speaking, this leaves him with his gross monthly salary of $8,667."  After consideration of its findings, the district court declined to award wife spousal maintenance.

### B. Standard of Review and Applicable Law

¶ 23    We review a maintenance order for an abuse of discretion. *In re Marriage of Tooker*, 2019 COA 83, ¶ 12. We defer to the district court's factual findings about maintenance "unless they are clearly erroneous." *Capparelli*, ¶ 30.

¶ 24    When considering whether to award maintenance, a district court must consider thirteen enumerated factors in addition to "[a]ny other factor that the court deems relevant." § 14-10-114(3)(c)(I–XIII). As relevant here, those factors include: (1) the financial resources of the recipient spouse, including the actual or potential income from separate or marital property or any other source and the ability of the recipient spouse to meet her needs independently; (2) the financial resources of the payor spouse, including the actual or potential income from separate or marital property or any other source and the ability of the payor spouse to meet his reasonable needs while paying maintenance; (3) the lifestyle during the marriage; (4) the distribution of marital property, including whether additional marital property may be awarded to reduce or alleviate the need for maintenance; (5) both parties' income; and (6) the duration of the marriage. *Id.*

12

¶ 25 After considering the statutory factors, a court "shall award maintenance only if it finds that the spouse seeking maintenance lacks sufficient property, including marital property apportioned to . . . her, to provide for . . . her reasonable needs and is unable to support . . . herself through appropriate employment." § 14-10-114(3)(d). The district court has discretion to determine the award of maintenance that is "fair and equitable to both parties based upon the totality of the circumstances." § 14-10-114(3)(e).

## C. Analysis

¶ 26 Wife contends that by denying her maintenance, the district effectively required her to deplete her monthly $5,000 equalization payments from the division of property to meet her and the children's expenses. We agree.

¶ 27 A dependent spouse is not required to deplete her share of the marital property in order to qualify for maintenance, so receipt of marital property in the form of payments "cannot be viewed as a substitute for maintenance." *In re Marriage of Bartolo*, 971 P.2d 699, 702 (Colo. App. 1998); *accord In re Marriage of Nordahl*, 834 P.2d 838, 842 (Colo. App. 1992).

13

¶ 28    Wife requested $3,698 monthly in maintenance.  The district court looked at husband's monthly income of $16,350, of which husband had to pay wife $5,000 every month for her portion of the business, as well as reinvesting in the business, reducing his gross monthly income to around $8,667, "from which it would be difficult to pay an additional $3,698 in maintenance as [w]ife requests."  But the $5,000 monthly payments to wife were not to be substituted for living expenses; rather, those were equalization payments to ensure she received her share of the business, which no one disputes is marital property.  Indeed, husband wanted to retain possession of the marital home so that the children had stability.  The court could not square that request with husband also retaining the business, and, therefore, the court ordered the sale of the home and monthly payments to wife for her share of the business — which had to be her share of the division of marital property, not income, in order for the division of property to be equitable.

¶ 29    Wife relies on *Bartolo*, 971 P.2d at 702; *Nordahl*, 834 P.2d at 842; and *In re Marriage of Eller*, 552 P.2d 30, 31 (Colo. App. 1976) for the well-settled proposition that she cannot be required to deplete her share of the marital property for living expenses in lieu

of maintenance. We agree that while the monthly installments might provide wife with a liquid asset, this does not mean that she must deplete her division of the marital property for living expenses.

¶ 30 The court's reasoning demonstrates that, even though it said the $5,000 was not income, it treated it as such. The court noted that, according to its maintenance worksheet calculations, wife should receive $4,918 a month. It then stated that wife could use the $5,000 equalization payment to "pay part of her personal expenses [or] pay for a mortgage on a home," or she could "invest it and earn returns, save it for the short term, or save it for retirement." In other words, husband's income of $8,667 was about equal to wife's income of $3,987 once the $5,000 payment was included.

¶ 31 But as was true in *Eller*, the property awarded to wife "was not so substantial as to provide significant income for her to live on." 552 P.2d at 31. Indeed, the court's own findings support that it considered the $5,000 monthly equalization payments as part of wife's income by acknowledging that these payments provide "a means [for wife] to support herself" in lieu of maintenance. In

contrast, it does not appear that husband would have needed to deplete his marital property to meet his expenses.

¶ 32    Notwithstanding this case law — and the fact that the district court's denial of maintenance requires wife to deplete or at least use her division of marital property — husband contends the cases relied on by wife are inapplicable.  Specifically, he claims that the court did not require her to deplete her division of marital property because it made findings that she had adequate funds to live on with her monthly equalization payments and receipt of over one million dollars' worth of assets in marital property.  But this misses the point.  Without the equalization payment of $627,500 — broken into monthly payments of $5,000 — for wife's share of the business, wife would not have received an equitable division of property; therefore, the court's ruling necessarily requires her to deplete her marital property to support herself.

¶ 33    Husband also contends that the district court took into consideration that he has historically reinvested profits to capitalize the business, and if he is required to pay maintenance, less capital will go into the business, putting at risk growth and current liabilities and obligations.  But we view this argument to be part of

16

the valuation of the business asset itself, and husband has not pointed to any evidence in which he specifically delineates how less capital might adversely affect the business. Even so, such evidence might be relevant to determine an appropriate amount of maintenance to award to wife — not whether she is entitled to it.

¶ 34 In sum, the district court incorrectly treated the monthly equalization payments to wife as income or a portion of her monthly income, rather than as marital property, and required her to deplete this property to meet her and the children's expenses in lieu of maintenance. Because the court abused its discretion, we reverse this portion of the permanent orders and remand for the court to reconsider wife's request for maintenance.

¶ 35 As part of this reconsideration, and because on remand the court must take into account the parties' present circumstances, the court may consider the net equity that wife actually received in the home, given her request that the court factor closing costs into its division of property. Even though we found this error to be harmless in the context of the division of property, with respect to maintenance, the court may consider the position wife has been left in following the sale of the home.

¶ 36 The court may also consider the payments wife receives from Aveanna — the entity that both parties receive money from to support the care of one of their children with a disability — as part of her income for purposes of maintenance because the maintenance statute only precludes consideration of income from additional jobs of the obligor, not the obligee. *See* § 14-10-114(8)(c)(I) (for purposes of maintenance, gross income does not include "[i]ncome from additional jobs that result in the employment of the *obligor* more than forty hours per week or more than what would otherwise be considered to be full-time employment" (emphasis added)).

## IV. Child Support

¶ 37 Wife contends the district court erred by deviating downward from the statutory child support amount to the point of denying her child support. Because we have already concluded that the district court erred by denying wife spousal maintenance, on remand the court should reconsider — in light of the maintenance amount — whether an application of the guideline child support amount remains inequitable, unjust, or inappropriate.

18

## A. Standard of Review and Applicable Law

¶ 38    We review child support orders for an abuse of discretion. *In re Marriage of Garrett*, 2018 COA 154, ¶ 8.

¶ 39    Colorado's child support guidelines include a "[s]chedule of basic child support obligations" with explicit award schedules for families with one to six children and a combined monthly income of up to $30,000. *In re Marriage of Boettcher*, 2019 CO 81, ¶ 13 (quoting § 14-10-115(7)(b), C.R.S. 2025). There is a rebuttable presumption that a child support award should correspond to the amount outlined in the guidelines. *See* § 14-10-115(8)(e); *Boettcher*, ¶ 14. A court may deviate from the schedule it if determines that the presumptive amount would be "inequitable, unjust, or inappropriate." § 14-10-115(8)(e).

¶ 40    Reasons to deviate from the guideline child support amount include, but are not limited to: (1) instances where one of the parents spends substantially more time with the children than is reflected by a straight calculation of overnights; (2) the extraordinary medical expenses incurred for treatment of either parent or a current spouse; (3) extraordinary costs associated with parenting time; (4) the gross disparity in income between the

parents; (5) the ownership by a parent of a substantial nonincome producing asset; (6) consistent overtime not considered gross income under the statute; or (7) income from employment that is in addition to a full-time job or that results in the employment of the obligor more than forty hours per week or more than what would otherwise be considered to be full-time employment. *Id.* The existence of one of the enumerated factors "does not require the court to deviate from the guidelines" but may be a factor in the decision to deviate. *Id.* And the district court "may deviate from the guidelines" even if one of the enumerated factors does not exist. *Id.*

¶ 41    Factors a district court is to consider when determining the appropriate amount of child support to award include, but are not limited to: (1) the financial resources of the children; (2) the financial resources of the custodial parent; (3) the standard of living the children would have enjoyed had the marriage not been dissolved; (4) the physical and emotional conditions of the children and their educational needs; and (5) the financial resources and needs of the noncustodial parent. § 14-10-115(2)(b)(I)-(V).

## B.    Analysis

¶ 42    As previously noted, the parties stipulated to equal parenting time.  The district court found that based on the parties' incomes as discussed above, awarding the guideline amount of $1,485 per month in child support to wife was inequitable, unjust, or inappropriate.  It therefore deviated downward, ordering no child support.

¶ 43    Because a change in spousal maintenance may affect the district court's consideration of child support, we decline to address this issue on the merits.  *Cf. People in Interest of M.H-K*, 2018 COA 178, ¶ 83 (declining to address an issue because, even if the issue was presented on remand, the circumstances "[would] have evolved").  Indeed, as the district court noted, had it awarded wife maintenance, the guideline amount of child support of $50 would be owed to wife from husband, which the court found to be de minimis.  But the court may not consider the income either of the parties receive from Aveanna related to caring for their child with a disability.  *See* § 14-10-115(5)(a)(II)(c) (for purposes of child support, gross income does not include "[i]ncome from additional jobs that result in the employment of more than forty hours per week or more

21

than what would otherwise be considered to be full-time employment"). Thus, after reconsidering wife's request for maintenance, the court should also reconsider its child support ruling.

## V. Attorney Fees and Costs

¶ 44 Husband requests appellate attorney fees and costs under section 13-17-102, C.R.S. 2025. Because we have deemed wife's appeal to be meritorious, we deny his request. *See Rademacher v. Becker*, 2015 COA 133, ¶ 30 (denying the appellee's request for attorney fees as a sanction for filing a frivolous appeal because the appellant prevailed on appeal).

## VI. Conclusion

¶ 45 We affirm the portion of the permanent orders concerning the court's division of property but reverse the court's denial of spousal maintenance and child support. We remand this case to the district court to conduct further proceedings consistent with this opinion.

JUDGE PAWAR and JUDGE GOMEZ concur.